[No. S099260. July 11, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
MAC DAVID COCHRAN, Defendant and Appellant.

COUNSEL

Gregory Marshall, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Janelle M. Boustany, Laura Whitcomb Halgren, Steven T. Oetting and Arlene Aquintey Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—Penal Code section 311.4 proscribes employing a minor to produce child pornography. (Further statutory references are to the Penal Code.) Subdivision (b) of that section provides for a longer prison sentence than otherwise if the defendant makes the pornography "for commercial purposes." We granted review to decide whether producing child pornography and posting it on the Internet in order to induce others similarly to trade such pornography on the Internet (without making a monetary profit), satisfies the statute's commercial requirement. A major reason for providing additional punishment for defendants who produce child pornography for a

commercial purpose (rather than solely for personal use) is to deter and punish the production of pornography for purposes of exchanging it for other child pornography. Because courts have broadly construed the commercial purpose concept in many contexts, we conclude that posting child pornography on the Internet under the circumstances of this case satisfies the requirements of section 311.4, subdivision (b). Accordingly, we reverse the Court of Appeal judgment, which had reversed defendant's conviction for violating that provision.

## FACTS

After receiving information that someone had posted child pornography on three Internet newsgroup sites,[1] the FBI traced the e-mail to defendant. In conducting the warrant-based search of defendant's home, the police found a videotape defendant had made of his nine-year-old daughter and himself engaging in various sexual acts. The videotape is the source of the numerous still photographs defendant posted on the Internet. The videotape displays the child's vagina to the camera, showing her digitally penetrating herself, and inserting into her vagina a dildo and a vibrator. The videotape also shows defendant digitally penetrating the child's vagina with his finger, a dildo, a vibrator and his penis, and sodomizing her. The videotape was the primary evidence used against defendant.

From defendant's computer room, agents also recovered a packet of eight pieces of paper that had been printed from the same newsgroups to which defendant had posted the still photos of his daughter. The printed material consisted of defendant's messages and child pornography. In one message, defendant indicated he was trading in pornographic material. The message stated: "[I] did my part . . . now it[']s everyone else['s] turn [*sic*] no nudies." In a second message, defendant stated: "[I] did my part. [D]on't complain if you don't post . . . ." Still another message read: "Hi there. I have tons of Preteens & Animal pics. If you [want to] trade big time please email me to: royrhotmail.com [¶] Bye, Roy. [¶] P.S. [H]ere is some [samples] of the things [I] have. . . ."

After his arrest, defendant commented: "When you're caught, you're caught." He admitted posting the photographs on the Internet, and stated he

---

[1]As the Attorney General notes, an Internet newsgroup is set up so that subscribers can send messages to a common e-mail address that forwards the message to the group's other subscribers. Newsgroups also serve groups of regular participants, but these postings may be read by others as well. There are thousands of newsgroups currently posting about 100,000 new messages daily. In addition, two or more individuals wishing to communicate more immediately can enter a chat room to engage in dialogue. (*Reno v. American Civil Liberties Union* (1997) 521 U.S. 844, 851-852 [117 S.Ct. 2329, 2334-2335, 138 L.Ed.2d 874].)

made the pictures in the two months prior to the search of his home. He also admitted having engaged in sexual intercourse with his daughter over the four months prior to his arrest.

The child testified that the sexual relationship with her father began in the summer before the search, when she was about to enter fourth grade. She stated that her father filmed her with the videocamera once. She was not afraid of him, and he would hurt her "a little bit, but not that much." When she told him he was hurting her, he would stop. After the sexual acts, defendant would give his daughter money, school items, or candy. He told her not to say anything to anyone because he would get into trouble and go to jail. The child indicated she was both sad and angry about the things her father did to her.

Following a court trial, defendant was convicted and sentenced under numerous felony counts, including violating section 311.4, subdivision (b). The Court of Appeal reversed defendant's conviction for violating section 311.4, subdivision (b), after concluding his conduct was insufficient to support the conviction for employing a minor to produce pornography for "commercial purposes" under the statute. The dissent would have affirmed the conviction, concluding that the statute intended to punish pornographers who intend to trade the material on a widespread basis, which includes trading over the Internet.

The single issue for review is whether the Court of Appeal properly reversed defendant's conviction under section 311.4, subdivision (b), because the evidence failed to show that the photographs were produced and posted on the Internet for commercial purposes. The court modified the conviction after concluding that defendant used the child to produce pornographic images for noncommercial purposes, a violation of section 311.4, subdivision (c).

## DISCUSSION

### 1. *Statutory Construction*

The " 'goal of statutory construction is to ascertain and effectuate the intent of the Legislature.' " (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) In approaching this task, we must first look at the plain and commonsense meaning of the statute because it is generally the most reliable indicator of legislative intent and purpose. (*People v. Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999].) If there is no ambiguity or uncertainty in the language, the Legislature is

presumed to have meant what it said, and we need not resort to legislative history to determine the statute's true meaning. (*People v. Hendrix* (1997) 16 Cal.4th 508, 512 [66 Cal.Rptr.2d 431, 941 P.2d 64].)

### 2. *Section 311.4, Subdivision (b)*

Section 311.4, subdivision (b), provides in part: "Every person who, with knowledge that a person is a minor under the age of 18 years . . . knowingly promotes, employs, uses, persuades, induces, or coerces a minor . . . to engage in . . . preparing any representation of information, data, or image, including, but not limited to, any . . . photograph . . . videotape . . . or any other computer-generated image that contains or incorporates in any manner . . . a live performance involving, sexual conduct by a minor under the age of 18 years alone or with other persons . . . *for commercial purposes,* is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."[2] (Italics added.)

The statute also covers a parent or guardian who knowingly permits his or her child to participate in the production of pornography for commercial purposes. Therefore, under section 311.4, subdivision (b), the elements of the crime of the use of a child in the production of pornography for commercial purposes are as follows: For any person, the defendant must: (1) knowingly have caused a child, (2) who is known or should be known to be a child, (3) to participate in the production of any representation of sexual conduct by a child, (4) for commercial purposes. For a parent or guardian of a child under his or her control, a defendant must: (1) knowingly have permitted the child, (2) to participate in the production of any representation of sexual conduct by a child, (3) for commercial purposes.

Section 311.4, subdivision (c), is substantially identical to subdivision (b), except that it provides for a lesser degree of punishment by providing that:

---

[2]Section 311.4, subdivision (b), states in its entirety: "Every person who, with knowledge that a person is a minor under the age of 18 years, or who, while in possession of any facts on the basis of which he or she should reasonably know that the person is a minor under the age of 18 years, knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 18 years, or any parent or guardian of a minor under the age of 18 years under his or her control who knowingly permits the minor, to engage in or assist others to engage in either posing or modeling alone or with others for purposes of preparing any representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film, filmstrip, or a live performance involving, sexual conduct by a minor under the age of 18 years alone or with other persons or animals, *for commercial purposes,* is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years." (Italics added.)

"It is not necessary to prove commercial purposes in order to establish a violation of this subdivision." (See § 18 [defining felony punishment not otherwise prescribed as imprisonment for 16 months, or two or three years].) Section 311.4, subdivision (c), therefore provides for a less serious offense with a less severe sentencing range than subdivision (b).

Enacted in 1961, section 311.4 is part of a statutory scheme " 'to combat the exploitive use of children in the production of pornography.' " (*People v. Cantrell* (1992) 7 Cal.App.4th 523, 540 [9 Cal.Rptr.2d 188].) The statute is "aimed at extinguishing the market for sexually explicit materials featuring children." (*Ibid.*) The Legislature was particularly concerned "with visual displays such as might be found in films, photographs, videotapes and live performances," and section 311.4 thus "prohibits the employment or use of a minor . . . in the production of material depicting that minor in 'sexual conduct.' " (*Cantrell, supra,* at p. 540.)

Although section 311.4, subdivision (b), does not define the term "commercial purposes," the Court of Appeal majority agreed with defendant's principal claim that it "is a phrase generally associated with a profit-making enterprise." (*People v. Tatman* (1993) 20 Cal.App.4th 1, 13 [24 Cal.Rptr.2d 480].) In construing the meaning of commercial purposes, the majority concluded no evidence showed defendant intended to make a profit from the pornographic photographs he posted on the Internet. The court reasoned that the posting of defendant's photographs on the Internet for trading with other pedophiles did not show he had a commercial purpose when he posted them. The court observed that "[t]he [posting] of the photographs may demonstrate the invidious nature of the Internet in perpetuating the appearance of material even after it has been removed from a particular site, but it does not show that [the] person posting the material had a commercial purpose, i.e., an intent to make a profit, when he posted the material."

The Court of Appeal majority also rejected the Attorney General's claim that defendant's commercial purpose was shown by his use of " 'various lighting techniques to enhance the quality of the video' " and his possession of two other cameras and a computer. It concluded the evidence did not show that the equipment defendant used was anything other than typical home video quality, and found persuasive the fact that the photographs did not identify the participants. Evidently only one videotape existed and the People apparently did not prove that defendant had, at any time, sold other videotapes or solicited money for his tape or for the photographs taken from his tape.

As the Attorney General asserts, section 311.4, subdivision (b), does not require the People to prove that defendant intended to profit financially from

the distribution of the pornographic images. Rather, the Attorney General contends the statute applies also to those who produce in order to trade or induce others similarly to trade the pornographic material. In addition, the Attorney General claims that section 311.4, subdivision (b), requires the court to look at the producer's intent when he persuaded the child to create an image of sexual conduct.

As the Court of Appeal dissent explains, section 311.4, subdivision (b), makes it a crime to persuade, induce, or permit a child to pose for commercial pornography. The statute does not govern the actual sale or distribution of child pornography, as that conduct is governed by section 311.2, subdivision (b), which makes it a felony to commercially distribute obscene material containing sexual conduct performed by a child. Because section 311.2, subdivision (b), governs pornography distribution, it is subject to rigorous First Amendment scrutiny, which it satisfies by including an obscenity element.

■■■ The Attorney General points out that the Legislature's "dual approach" to regulating producers as well as distributors and retailers is necessary because, as one commentator notes, "[c]hild pornography is in essence a hybrid industry composed first of producers, who directly exploit the child physically to create a pornographic product, and secondly the close association of manufacturers, distributors, and retailers who cultivate and perpetuate the child pornography market. [¶] Regulation of both aspects, the child abusing producer as well as the distribution and retail of the pornographic materials, must be dealt with individually and harmonized to provide the most powerful deterrent to the practice of child sexploitation." (Comment, *Preying on Playgrounds: The Sexploitation of Children in Pornography and Prostitution* (1978) 5 Pepp. L.Rev. 809, 824-825.) Thus, section 311.4, subdivision (b), is one part of a "double-barrelled legislative attack which treats producers as child abusers whether or not the material is obscene, and deals with distributors and retailers of 'obscene' materials depicting minors under [F]irst [A]mendment analysis." (*Preying on Playgrounds, supra,* 5 Pepp. L.Rev. at pp. 838-839, fns. omitted.)

■■■ As the Court of Appeal dissent observed, an interpretation of section 311.4, subdivision (b), that does not require the defendant to act for financial profit is consistent with the Legislature's deliberate imposition of lengthier sentences on those who participate in creating commercial images as opposed to those who use the images for personal purposes only. The harm a child suffers increases if the record of her sexual abuse is widely disseminated and traded rather than used solely for the producer's sexual

gratification. For this reason, section 311.4, subdivision (b), provides for increased punishment when an image is created for commercial trading purposes. In other words, it is the image's commercialization (and the increased stigmatization to the victim that follows) by means of intended trading rather than the defendant's personal profit that creates the risk of increased harm to the victim and justifies the increased penalty. In addition, the invention of the Internet makes it easier for individuals, like defendant, to trade directly with other child pornographers without cash exchange. The Court of Appeal dissent's and the Attorney General's broader interpretation of the statute are consistent with the express inclusion in the statutory scheme of parents and guardians who knowingly permit a minor to be used in the production of child pornography, and the harm the Legislature sought to redress.

The Attorney General's position is also supported by our common understanding of the term "commercial purposes." *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499 [63 Cal.Rptr.2d 118] (*Hewlett*) is instructive. *Hewlett* was an unfair competition action brought by a private individual and other plaintiffs against Squaw Valley's ski resort after the defendant corporation cut down over 1,800 trees to carry out its ski development project even though litigation was pending at the time the trees were cut. The court found that the defendant corporation had engaged in unfair competition by cutting down the trees for a commercial purpose. (Bus. & Prof. Code, § 17200; Pub. Resources Code, § 4511 et seq.) The Court of Appeal disagreed with the defendant's claim that because the timber was not ultimately sold, the defendant could not have violated the Public Resources Code in failing to obtain an approved timber harvesting plan. (*Hewlett, supra,* 54 Cal.App.4th at p. 521.)

*Hewlett* rejected the defendant's interpretation of the term "commercial purposes," concluding that in defining the term, a court must focus on intent. The court observed that "[t]he dictionary defines 'purpose' as 'something set up as an object or end to be obtained: INTENTION.' (Webster's Ninth New Collegiate Dict. (1984) p. 957.) By utilizing the phrase 'cutting . . . for commercial purposes,' the Legislature focused on a party's intent at the time the trees were cut. . . ." (*Hewlett, supra,* 54 Cal.App.4th at p. 524.)

Common dictionary definitions of the term "commercial" also support the Attorney General's interpretation of the statutory phrase "commercial purpose." The American Heritage Dictionary defines "commercial" as "[o]f, pertaining to, or engaged in commerce." (American Heritage Dict. (1976) p. 267.) The same dictionary defines "commerce" as "[t]he buying and

selling of goods, especially on a large scale, as between cities or nations; business, trade." (*Ibid.*)

The United States Supreme Court's definitions of "commerce" and "commercial activity" provide additional support for the Attorney General's view that the term "commercial" embraces all phases of commercial activity, and need not be undertaken or motivated for profit. (See, e.g., *Jordan v. Tashiro* (1928) 278 U.S. 123, 128 [49 S.Ct. 47, 48, 73 L.Ed. 214] ["commerce" as used in treaty court "embraces every phase of commercial and business activity and intercourse"].) The Ninth Circuit Court of Appeals also uses a broad definition of the term in other contexts. (See, e.g., *Sun v. Taiwan* (9th Cir. 2000) 201 F.3d 1105, 1107-1108 [in determining whether the activities of Taiwan were commercial, court found profit motive irrelevant]; *Siderman de Blake v. Republic of Argentina* (9th Cir. 1992) 965 F.2d 699 [under Foreign Sovereign Immunities Act (28 U.S.C. § 1605 (a)(2)), "commercial" activity need not be undertaken for profit].)

The Attorney General asserts that in light of the above definitions, the phrase "preparing any representation . . . for commercial purposes" under section 311.4, subdivision (b), focuses less on evidence of a defendant's actual marketing of pornography in a profitmaking venture and more on a defendant's intent to trade it to the public at the time he is making the pornographic product. Here, the commercial purpose was shown by the planning and effort required to create the images that appear on the videotape, including various lighting techniques to enhance the quality of the video, and the defendant's possession of other equipment that would further his goal of producing pornography for commercial purposes. The commercial purpose was also shown by defendant's subsequent posting of still photographs from the videotape on the Internet. As the Attorney General observes, the posting was done to attract the attention of pedophiles who trade and market child pornography and who could not be reached by other means. Defendant's attempt to attract broad attention to the still images from the videotape when he posted them on the Internet strongly suggests that at the time he produced the tape defendant intended to commercialize it.

The tape itself reveals the considerable planning and effort defendant devoted to its production. Several times during the tape, defendant refers to the video he was making as a "movie." The movie consists of 11 separate episodes in which defendant's daughter engages in sexual conduct at her father's direction. The movie represents a progressive "plot" with the acts escalating to the child orally copulating defendant, inserting a dildo and vibrator into her vagina, and then defendant penetrating his child's vagina

and anus with his penis until he ejaculates. The movie ends with defendant cleaning up his semen from the child's vagina, and the child saying, "bye-bye camera."

*People v. Pitts* (1990) 223 Cal.App.3d 606 [273 Cal.Rptr. 757] (*Pitts*), supports our conclusion that the making of a pornographic "movie" with technical equipment and trading for other child pornography shows a commercial purpose under section 311.4, subdivision (b). In *Pitts*, numerous defendants had conducted an ongoing pornography filming project that involved several small children. (*Pitts, supra,* 223 Cal.App.3d at p. 885.) The court found the evidence was sufficient to support a commercial purpose conviction under section 311.4, subdivision (b), because the defendants sold or exchanged some of the still pictures "for drugs and stuff." (*Pitts, supra,* at p. 885.) Although the *Pitts* defendants had been producing the videos for a much longer period than defendant, the court relied not on the length of time involved, but on the fact that the trading for "drugs and stuff" supports a nonpecuniary interpretation of the term "commercial purposes" under section 311.4, subdivision (b).

As the Attorney General observes, the posting of still photographs and producing of commercial child pornography is powerful evidence that defendant was planning to attract the attention of numerous pedophiles and marketers of child pornography whom he could not reach by other means. Thus, although the profit defendant received may not have been monetary, the evidence showed he hoped his commercial trading on the Internet would enrich his collection of child pornography.

## CONCLUSION

Section 311.4, subdivision (b), provides for a more severe punishment for pornographers who engage in more than persuasion or coercion of a child into sexual acts for one's own personal gratification. The section punishes both "[e]very person" who produces pornography for commercial purposes, and "any parent or guardian" who knowingly causes a child, who he or she knows or reasonably should know is a child, to participate in the production of any representation of sexual conduct by a child for commercial purposes. The statute requires that we look to the defendant's intent at the time the image of child pornography is prepared and produced. The defendant need only intend to trade the pornography for a commercial purpose at some point in the future. We conclude, therefore, that a rational trier of fact could have found that once defendant knowingly caused his daughter to participate in

the production of the pornography for Internet trading, he violated section 311.4, subdivision (b). The Court of Appeal erred when it focused solely on whether defendant had financially profited from his Internet posting, trading, and videomaking enterprise.

We reverse the Court of Appeal judgment and remand the matter for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.