[No. D056954. Fourth Dist., Div. One. Jan. 30, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
HUBERT DYMITR HARASZEWSKI, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*The opinion in the above-entitled matter filed on January 30, 2012, is ordered certified for publication with the exception of parts I., II. and IV. of the Discussion.

**COUNSEL**

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Daniel Rogers and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NARES, J.**—The prosecution charged Hubert Dymitr Haraszewski, Jr., with 23 counts of various sex crimes involving four minors (Coby, Bryan G., Nolan F., and Darrell C.) over a period of more than a decade.[1]

The initial arrest and investigation began when a state park ranger patrolling San Onofre State Beach arrested Haraszewski on suspicion of child endangerment after observing Coby, who was then 12 years old, driving Haraszewski's car. A detective's warrantless search of the passenger compartment of Haraszewski's car revealed a book on oral sex, a massager, a tub of petroleum jelly, condoms, a digital camera, and a flash (or thumb) drive. A warrantless search of the trunk revealed another thumb drive, which contained sexually suggestive folders, under the spare tire. Suspecting that Coby may have been sexually molested, the detective viewed incriminating pictures on the camera without a warrant and then gave the evidence to another detective who was interviewing Coby. Coby eventually disclosed information showing Haraszewski had sexually molested him. After the court denied his motion to suppress the evidence, Haraszewski admitted various prior conviction allegations, and the court found true other prior conviction allegations. A jury found Haraszewski guilty of all 23 counts and all related enhancement allegations. The court sentenced him to a determinate prison term of 36 years and an indeterminate term of 600 years to life.

On appeal, Haraszewski contends (1) the search of his car following his arrest violated his rights under the Fourth Amendment to the United States Constitution because it was not reasonable to believe the car contained evidence of the offense of arrest, and thus the court erred by denying his motion to suppress the evidence obtained from the search; (2) the court committed prejudicial instructional error by failing to define the term "complaining witness" in CALCRIM No. 1190 concerning the noncorroboration requirement for sexual offense victim testimony "after several witnesses complained about [his] committing sex crimes against them"; (3) his two convictions for posing or modeling Coby and Bryan in violation of Penal Code[2] section 311.4, subdivision (c) (hereafter section 311.4(c)) must be reversed because the court erroneously instructed the jury, over a defense objection, that the prosecution did not have to prove he directed Coby and Bryan when he took images of them; (4) the evidence is insufficient to sustain his conviction for posing or modeling Coby because "Coby testified that there

---

[1] As most of the information about the 23 counts and related sentence enhancement allegations is not relevant to the issues raised on appeal, we shall dispense with a summary of the accusatory allegations set forth in the second amended consolidated information, and shall address the relevant charges and allegations as needed in the discussion portion of this opinion.

[2] All further statutory references are to the Penal Code.

was no posing or direction" and the pictures and movie he took of Coby at the nude beach were "not choreographed"; (5) the foregoing claimed instructional errors were cumulatively prejudicial, requiring reversal; and (6) the evidence is insufficient to support his four convictions of duplicating child pornography with intent to distribute it to a minor in violation of section 311.2, subdivision (d) (hereafter section 311.2(d)). We affirm the court's denial of Haraszewski's suppression motion and conclude the court did not commit instructional error and Haraszewski's cumulative error and insufficiency-of-the-evidence claims are unavailing. Accordingly, we affirm the judgment.

## FACTUAL BACKGROUND

### A. *The People's Case*

In the evening on October 20, 2007, State Park Officer Grant Beers issued a citation to a white BMW parked in the south day-use lot near trail 6 at San Onofre State Beach for being parked in the lot after the park closed. It was the only vehicle left on the lot. The beach near trail 6 is known as a clothing-optional (or nude) beach. Officer Beers notified State Park Officers Martin Urbach and Paul Brown, who were in a different patrol car, that the white BMW was still in the park and he had issued it a citation.

About 8:17 p.m. that night, while Officer Urbach was driving with Officer Brown, he saw the white BMW driving in the dark toward him northbound on the road near trail 5, which is north of trail 6. Officer Urbach saw that the BMW was being driven illegally by a young boy who was not old enough to drive. The officer made a U-turn to make a traffic stop. By the time he completed the U-turn, the BMW had stopped and the boy was switching seats with Haraszewski, who had been in the front passenger seat. Officer Urbach asked Haraszewski for his license and registration, and asked why the boy had been driving. Haraszewski said he was giving the boy a driving lesson. Haraszewski also said he had been hiking on the beach, denied that he and the boy had visited the clothing-optional part of the beach, and claimed he was the boy's cousin and the boy was "13 going on 14" years of age. The boy also said he was 13 going on 14. The police determined later that night that the boy (Coby) was 12 years of age and Haraszewski was 32.

After Officers Urbach and Brown made the traffic stop, Officer Beers and another officer, Paul Mills, arrived and saw the white BMW was the same car for which Officer Beers had issued the parking citation. At some point, Officer Urbach ordered Haraszewski and Coby out of the car, handcuffed Haraszewski, and put him in the back of the patrol car. Officers Beers and Mills dealt with Coby.

About two hours later, with Haraszewski still in the patrol car and Coby also still at the scene, Officers Urbach and Brown started inventorying the contents of the BMW because they were going to have the car towed away. They found camping gear in the backseat, a big tub of Vaseline, and a book on oral sex on the floorboard behind the driver's seat. At that point, Officer Brown, who was the supervisor, stopped the inventory and called the San Diego County Sheriff's Department to ask for an investigator to assist them. He and Officer Urbach put the items back inside the BMW where they had found them.

At around 9:53 p.m., with Haraszewski and Coby still at the scene, a sheriff's department patrol unit arrived, and then Detective Justin White, who worked as a child abuse detective for the sheriff's department, arrived and searched the BMW, both to assist with the inventory and to look for evidence. Detective White searched the entire car, including both the passenger compartment and the trunk, and photographed everything he found. In the passenger compartment, he found camping equipment, a bottle of vodka, a massager, a blue bag, the book on oral sex, a laptop computer, a digital camera, a small thumb drive, a lot of condoms with some packages of lubricant inside a container, and some petroleum jelly. In the trunk, Detective White found a second thumb drive under the spare tire.

Detective White took the evidence he found in Haraszewski's car to the Encinitas sheriff's station, where he gave the items to his partner, Lisa Brannan, who was also a child abuse detective. Detective Brannan examined the camera and found on the memory card images of Coby, including one showing him nude on the beach. She also found on the memory card a movie of Coby with Haraszewski talking. On the LG thumb drive found under the spare tire in the trunk of Haraszewski's car, the police found hundreds of images of naked boys, including boys engaged in sexual activity. The folders on the drive had labels corresponding to the types of images found in the folders. One folder contained pictures of naked boys being spanked. On the other thumb drive, the police found copies of MySpace conversations and messages.

Detective Brannan interviewed Coby at the sheriff's station around midnight on October 20 to 21, 2007. The interview lasted over an hour. Initially, Coby denied that anything sexual had happened. Later in the interview, he admitted Haraszewski had masturbated his (Coby's) penis two or three times and twice put his mouth on his penis.

*Subsequent Investigation/Daniel P.*

Daniel P. testified he met Haraszewski at "the U," an area in Palmdale where kids ride BMX bicycles, when he was 17 years old. At that time, Haraszewski was living with his parents near Daniel's house in Palmdale.

Detective Brannan listened to a recorded telephone conversation that had taken place on November 23, 2007, between Haraszewski and Daniel. During that conversation, Haraszewski asked Daniel to go to Haraszewski's parents' house to retrieve and hide some thumb drives and a memory card for a camera. Daniel retrieved the items and later turned them over to Detective Brannan.

Detective Brannan obtained a search warrant, viewed the images on the thumb drives and memory card, and took them to the Regional Computer Forensics Laboratory (RCFL) for analysis. On one of the thumb drives, the police found copies of My Space pages and conversations, other writings, pictures of Coby, pictures of a 10-year-old boy named Bryan, and images of children engaged in sexual activity. One of the pictures of Bryan was also found on another thumb drive along with more copies of MySpace messages.

In an August 13, 2007 MySpace conversation between Haraszewski and Coby, Haraszewski told Coby about a bike seat and gloves he wanted to give to him. In an August 24, 2007 conversation, the two discussed dying their hair and pubic hair pink or purple. In another conversation, Haraszewski sent Coby a "virtual coupon" that read, "This coupon entitles you to do what you want with me." Haraszewski sent another coupon for "one free Fondle." When Coby asked what he meant, Haraszewski replied, "Fondle? Lol! Like when u make someone play wit u, u know . . . lol . . . down there? Lol!" In a September 2007 conversation, Haraszewski and Coby discussed their plans to go camping together.

In another online conversation found on a thumb drive, Haraszewski discussed the October 20, 2007 beach trip with someone named Kieran. Haraszewski told Kieran that Coby asked Haraszewski to take him to the nude beach. Haraszewski described how Coby played with a vibrating back massager and put it on his crotch while they were in a Wal-Mart store buying camping equipment. He also wrote about how he enjoyed Coby touching his chest and how Coby balanced a chocolate milk container on his erect penis through his shorts while they were in the car on the way to the beach. Haraszewski also wrote about wanting to buy "hair bleach" to "bleach [Coby's] pubes and dye them purple like mine later."

Haraszewski also told Kieran that after he and Coby undressed at the beach, he avoided looking at Coby so that he (Haraszewski) would not get an

erection. He described showing Coby his erection while they were in the water and then playing in the sand with Coby. Haraszewski also indicated Coby agreed to "mess around" with him but not engage in oral sex. Haraszewski claimed Coby "expected to be touched" and said he "[had] a strong feeling [Coby] was even looking for more." He described Coby as "hot" and "sexy."

Haraszewski indicated to Kieran that after they went into a cave, he and Coby took off their clothes and both had erections. He described Coby's penis in detail for Kieran. He told Kieran that park rangers stopped him after he let Coby drive, and he "was arrested [on] suspicion of child abuse." He mentioned the rangers found a tent, a sleeping bag, a back massager, a bottle of alcohol, a "book on givin[']] head," and a "little [USB] drive" containing "nude pic[tures] of a minor [he] was accused of abusing."

In mid-December 2007, Detective Brannan executed a search warrant at Haraszewski's parents' home in Palmdale and found more writings belonging to Haraszewski, including a printout of an instant message conversation in which he discussed taking Coby to the beach. In July 2008, Detective Brannan seized more boxes of Haraszewski's writings in a search of his parents' garage.

*Coby's Testimony*

Coby testified that in 2007, when he was 12 years old, he lived in Costa Mesa with his father and stepmother. He liked to go BMX biking at a place called Sheep Hills. He met Haraszewski at Sheep Hills at the end of July 2007. Haraszewski told him he was 19 and his name was "Squirrel." Haraszewski gave him his e-mail address so that Coby could find his MySpace page.

Coby added Haraszewski as a MySpace friend and they began communicating through MySpace. Haraszewski would hang out with him every other weekend, usually at Sheep Hills to ride bikes. Haraszewski met Coby's father and stepmother.

Coby testified that Haraszewski asked him whether he had ever had sex and whether he wanted to have sex. When Haraszewski told Coby that he liked him, Coby did not know what Haraszewski meant but was "weirded out by it." Haraszewski tried to touch Coby's penis when they were at the beach in San Onofre on October 20, 2007. They had talked on MySpace about going camping and Coby's father had given permission. Coby met Haraszewski at Sheep Hills, they put his bike in Haraszewski's BMW, and then they drove to San Onofre. They parked the car, took pictures of each other, and then

walked down the trail to the beach. Both Haraszewski and Coby took their clothes off on the beach. Coby testified he did not want to take his clothes off; it was Haraszewski's idea that Coby should take off his pants.

Haraszewski took pictures of Coby on the beach that day. Coby was nude in at least two of the photographs and in a video Haraszewski took that day.

Coby indicated that after he and Haraszewski got dressed Haraszewski showed him an opening to a nearby cave in the cliffs that was big enough to walk into. While they were in the cave, Haraszewski told him to take off his pants and then he touched Coby's penis. The touching stopped when Coby jumped back. When they left the cave at around sundown, they walked around on the beach. It was dark when they finally made their way back up the trail.

Haraszewski asked Coby whether he wanted to drive the BMW and Coby said he did. Coby testified it was "a little driving lesson," and Haraszewski sat in the front passenger seat while Coby was driving. When they saw the park rangers' patrol car, they stopped and switched seats. Haraszewski told him to tell the officers they were cousins.

Haraszewski told Coby on several occasions that he wanted to be more than just friends with him. Coby testified that Haraszewski touched his penis on two separate occasions in a cave at Sheep Hills in Costa Mesa. Both times Haraszewski stuck his hands down Coby's pants. Coby never told his father or stepmother about the touching because he was embarrassed and afraid.

*Bryan G.'s Testimony*

Bryan G., who was 12 years old at the time of the 2009 trial in this matter, testified he met Haraszewski in 2007 while he was riding his BMX bike at the U in Palmdale. Haraszewski took him to an old abandoned car in the mountains near the area where they rode bikes. When they went inside the car, Haraszewski told Bryan to take off his clothes. Bryan did not want to take off his pants, so Haraszewski took them off without Bryan's help. When Bryan was naked, Haraszewski took photographs of Bryan's genitals. Haraszewski told Bryan to grab what Bryan referred to as his "private part," and, when Bryan complied, Haraszewski took a photograph of him. Bryan tried to leave but Haraszewski kept pulling him back and told him not to leave. Haraszewski, who was wearing his pants, put the camera in a front pocket and touched Bryan's penis with his hand, which made him uncomfortable. Bryan tried to put his clothes on, but Haraszewski kept pulling them down. When Haraszewski heard Bryan's mother calling for him, Haraszewski got scared. Bryan put his clothes back on and left. Haraszewski told Bryan not to tell anyone what had happened and said he would loan Bryan his iPod if he did not tell.

*Darrell C.'s Testimony*

Darrell C., who was 28 years of age at the time of trial, was 10 or 11 years old when he met Haraszewski while roller skating. They became friends and hung out together almost every day. Their friendship eventually became a sexual relationship. It began when Haraszewski slipped his finger into a hole in Darrell's sweatpants and rubbed Darrell's penis for three to five minutes. At that time Darrell was 11 or 12 years old and Haraszewski was 16 or 17. Later, Haraszewski gave Darrell an ultimatum, indicating he would not be Darrell's friend unless Darrell agreed to be more than friends. Eventually, Darrell gave in and allowed Haraszewski to touch his penis and perform oral sex upon him. These touchings occurred sometime between 1993 and late 1994 or early 1995. The sexual activity occurred frequently. Most often, it occurred at Haraszewski's parents' house, but sometimes it happened in a wooded area near the BMX tracks. Darrell cut off contact with Haraszewski when Darrell was 15 or 16.

*Nolan F.'s Testimony*

Nolan F. testified he met Haraszewski when Nolan was 10 or 11 years old and Haraszewski was 19 or 20 years old. He met Haraszewski through his stepbrother's BMX biking. After about six months, Haraszewski started masturbating Nolan, who was in sixth grade at the time, and later started orally copulating him. Haraszewski masturbated Nolan at least 36 times and orally copulated him more than a dozen times.

*Expert Testimony*

The prosecution presented expert testimony to explain why children often delay disclosing sexual abuse. Some children who have known the abuser for a long time may feel emotionally bonded to their abuser. Others have difficulty admitting they were victims because they are ashamed or embarrassed or feel culpable because they participated. Many victims initially make only partial or tentative disclosures and later disclose details of the sexual activity. Although young children are considered susceptible to suggestion during questioning, children older than 10 are no more susceptible than adults.

*Prior Convictions*

In 1996, in Ventura County Superior Court case No. CR38454, Haraszewski pleaded guilty to three counts of committing a lewd act upon a child under the age of 14 (§ 288, subd. (a)), two counts of child molestation (§ 647.6), one count of sexual exploitation of a child (§ 311.3, subd. (b)(5)), two counts

of solicitation to commit sexual assault (§ 653f, subd. (c)), and one count of contributing to the delinquency of a minor (§ 272).

## B. *The Defense Case*

Haraszewski testified he was 34 years of age, and in the previous few years he had been a full-time student who also worked in telemarketing. He met Darrell in 1993 when he was 17 and Darrell was 11. Haraszewski turned 18 in October 1993. He admitted to having been in love with Darrell and having a sexual relationship with him. He also admitted giving Darrell an ultimatum in 1993 about ending the friendship or turning it sexual. His relationship with Darrell when Darrell later came back from New York for visits included masturbation, oral sex, and anal sex. Darrell was 14 years old, and he was 19.

Haraszewski testified the first time he had sexual contact with Darrell he touched Darrell's penis while he was showering. Haraszewski was 18 and Darrell was 12. he admitted masturbating Darrell countless times, and performing oral sex upon him more than 24 times.

Haraszewski also admitted having a sexual relationship with Nolan. The first time consisted of masturbating Nolan in his room in 1995 when Haraszewski was 19 and Nolan was 11. Haraszewski performed oral sex upon him six times and masturbated him fewer than 10 times. Once they had oral sex while in the Disneyland parking lot.

Haraszewski also admitted having a sexual relationship with a boy named David and pleading guilty to several sex offenses based on sexually touching him. He also admitted taking pictures of Bryan in the abandoned car but denied forcing him and posing him. When he took the pictures of Bryan in the nude, Haraszewski was out on bail on charges related to Coby in this case. Haraszewski indicated that Bryan wanted to strip for the pictures and Haraszewski did not discourage it. Haraszewski indicated he never threatened or tried to bribe Bryan. He downloaded the pictures onto a thumb drive. Haraszewski admitted asking Daniel to retrieve the thumb drive for safekeeping.

Haraszewski indicated he never intimately touched Coby. He denied touching him at the cave at the Sheep Hills bike park. He admitted making plans with Coby to go to the nude beach. He denied touching Coby's penis at the nude beach. Haraszewski took pictures of him, but did not pose him. He indicated they touched each other when they put lotion on each other's back. Haraszewski denied touching Coby's penis in the cave at the beach. He admitted talking with him about orally copulating him, but never did it.

## DISCUSSION

### I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *POSING OR MODELING A MINOR (§ 311.4(c)): CLAIMS OF INSTRUCTIONAL ERROR (COUNTS 2 & 8) AND INSUFFICIENCY OF THE EVIDENCE (COUNT 2)*

Haraszewski next contends his two convictions for posing or modeling Coby and Bryan in violation of section 311.4(c) must be reversed because the court erroneously instructed the jury, over a defense objection, that the prosecution did not have to prove he directed Coby and Bryan when he took images of them. In a related claim, Haraszewski also contends the evidence is insufficient to sustain his conviction for posing or modeling Coby because "Coby testified that there was no posing or direction" and the pictures and movie he took of Coby at the nude beach were "not choreographed." We reject these contentions.

#### A. *Section 311.4(c)*

As pertinent here, section 311.4(c) punishes anyone who, "with knowledge that a person is a minor under the age of 18 years, . . . knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 18 years . . . to engage in . . . either posing or modeling . . . for purposes of preparing any . . . image, including, but not limited to, any . . . photograph[ or] videotape . . . involving . . . sexual conduct by a minor."

#### B. *Claim of Instructional Error*

Relying on *People v. Hobbs* (2007) 152 Cal.App.4th 1 [60 Cal.Rptr.3d 685] (*Hobbs*), Haraszewski claims the court misinstructed the jury as to an element of the crimes of posing or modeling Coby and Bryan by erroneously instructing the jury that "[t]here is no requirement that [Haraszewski] direct the child to pose or model." Haraszewski asserts that this "erroneous jury instruction lowered the burden of proof because it allowed the prosecution to argue that there was no need to prove direction by [him]," and thus reversal of his convictions of those counts is required. We disagree and conclude Haraszewski's reliance on *Hobbs* is misplaced.

---

*See footnote, *ante*, page 924.

### 1. *Applicable Legal Principles*

"The trial court must instruct even without request on the general principles of law relevant to and governing the case . . . [including] instructions on all of the elements of a charged offense." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1], citation omitted.) "[A]n instructional error that improperly . . . omits an element of an offense . . . generally is not a structural defect in the trial mechanism that defies harmless error review and automatically requires reversal under the federal Constitution." (*People v. Flood* (1998) 18 Cal.4th 470, 502–503 [76 Cal.Rptr.2d 180, 957 P.2d 869].) Such an error is reviewed under the harmless error standard announced in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]. (*Flood*, at p. 503.) Under the *Chapman* standard, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 681 [89 L.Ed.2d 674, 106 S.Ct. 1431].)

### . 2. *Analysis*

We are asked to resolve an issue of statutory interpretation: Whether a defendant's act of directing a child to pose or model is an element of the crime of posing or modeling a minor in violation of section 311.4(c). In resolving this issue, we are guided by well-established principles of statutory interpretation.

■ "The ' "goal of statutory construction is to ascertain and effectuate the intent of the Legislature." ' [Citation.] In approaching this task, we must first look at the plain and commonsense meaning of the statute because it is generally the most reliable indicator of legislative intent and purpose. [Citation.] If there is no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said, and we need not resort to legislative history to determine the statute's true meaning." (*People v. Cochran* (2002) 28 Cal.4th 396, 400–401 [121 Cal.Rptr.2d 595, 48 P.3d 1148] (*Cochran*).)

■ Furthermore, "[w]e do not . . . consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) "The interpretation of a

statute presents a question of law subject to de novo appellate review." (*People v. Wills* (2008) 160 Cal.App.4th 728, 736 [73 Cal.Rptr.3d 104].)

█ Applying the foregoing principles, we conclude a defendant's act of directing a child to pose or model is not an element of the crime of posing or modeling a minor in violation of section 311.4(c). None of the express provisions of this subdivision set forth any such requirement.[4] Considering section 311.4(c) in the context of the section 311.4 statutory framework as a whole, we also conclude no such requirement should be deemed an implied element of this crime in order to effectuate the intent of the Legislature and the purpose of the statute. In *Cochran, supra,* 28 Cal.4th 396, the California Supreme Court explained that section 311.4, which was enacted in 1961, "is part of a statutory scheme ' "to combat the exploitive *use* of children in the production of pornography." ' [Citation.] The statute is 'aimed at extinguishing the market for sexually explicit materials featuring children.' [Citation.] The Legislature was particularly concerned 'with visual displays such as might be found in films, photographs, videotapes and live performances,' and section 311.4 thus 'prohibits the *employment or use of a minor . . .* in the production of material depicting that minor in "sexual conduct." ' " (*Cochran, supra,* 28 Cal.4th at p. 402, italics added.) Thus, the intent of the Legislature in enacting section 311.4(c) and the other provisions of that section was to punish the exploitive *use* of children in the production of pornography. (*Cochran,* at p. 402.)

None of the express provisions of section 311.4(c) nor any aspect of the purpose of the statutory framework of which that subdivision is a part— namely, " ' "combat[ting] the exploitive use of children in the production of pornography" ' " (*Cochran, supra,* 28 Cal.4th at p. 402)—evinces a legislative intent to require the prosecution to prove beyond a reasonable doubt, as an essential element of a violation of section 311.4(c) charge, that the accused committed an act of directing an alleged child victim to pose or model. A person can "knowingly promote[], employ[], use[], persuade[], induce[], or

---

[4] Section 311.4(c) provides in full: "Every person who, with knowledge that a person is a minor under the age of 18 years, or who, while in possession of any facts on the basis of which he or she should reasonably know that the person is a minor under the age of 18 years, knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 18 years, or any parent or guardian of a minor under the age of 18 years under his or her control who knowingly permits the minor, to engage in or assist others to engage in either posing or modeling alone or with others for purposes of preparing any representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film, filmstrip, or a live performance involving, sexual conduct by a minor under the age of 18 years alone or with other persons or animals, is guilty of a felony. It is not necessary to prove commercial purposes in order to establish a violation of this subdivision."

coerce[] a minor under the age of 18 years . . . to engage in . . . either posing or modeling . . . for purposes of preparing" child pornography in violation of section 311.4(c) without personally directing the child to pose or model. The case of *Hobbs, supra,* 152 Cal.App.4th 1, on which Haraszewski unavailingly relies, is illustrative.

In *Hobbs,* the defendant was convicted of 40 counts of violating section 311.4(c). (*Hobbs, supra,* 152 Cal.App.4th at p. 3.) The charges arose out of his surreptitious filming of the members of a girls' high school swim team in a locker room. Before a swim meet, the defendant sneaked into the girls' locker room at one end of which was a raised coaches' office equipped with large windows that afforded a view of most of the locker room. (*Id.* at p. 4.) The defendant covered the windows using paper and tape, made a small hole in the paper, and set up a video camera to film the girls through the hole. (*Ibid.*) He also used cones, caution tape, and handwritten " 'Do Not Enter' " signs to block off rows of lockers that were outside the range of his camera. (*Ibid.*) He then filmed more than 40 girls, whose ages ranged from eight to 18 years, as they changed into and out of their bathing suits. (*Ibid.*)

On appeal, the defendant, like Haraszewski here, contended his section 311.4(c) convictions should be reversed on the ground of insufficiency of the evidence because " 'the plain language of [the] section . . . requires that the [victims] be engaged in posing or modeling *at the direction of [defendant].*' " (*Hobbs, supra,* 152 Cal.App.4th at p. 5, italics added.) The Court of Appeal rejected this contention, explaining that "[s]ection 311.4[(c)] says *nothing* about posing or modeling *at the direction of the defendant* and he has provided no legislative history suggesting that this was the statute's intent." (*Hobbs,* at p. 5, original italics.) The *Hobbs* court also explained that the defendant posed the victims "without having to direct them in person" (*id.* at p. 7) by "herding them with the signs, cones and caution tape to a position most favorable to filming, the same as if he had been in the [locker] room directing them to stand in front of the camera" (*id.* at p. 8).

■ The holding and reasoning in *Hobbs* thus support the People's arguments that section 311.4(c) "does not require that the posing or modeling be at the direction of the defendant"; and, thus, the court did not err in instructing the jury that "[t]here is no requirement that [Haraszewski] direct the child to pose or model" because this instruction is a correct statement of the law. Haraszewski's reliance on *Hobbs* is misplaced.

For all the foregoing reasons, we reject Haraszewski's contention the court erroneously instructed the jury that the prosecution did not have to prove he directed Coby and Bryan to pose or model.

## C. *Insufficiency of the Evidence Claim*

When assessing a challenge to the sufficiency of the evidence, we apply the substantial evidence standard of review, under which we view the evidence "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

Here, in support of his related claim that there is insufficient evidence to support his count 2 conviction of posing Coby in violation of section 311.4(c), Haraszewski relies on Coby's cross-examination testimony showing that he (Haraszewski) did not personally pose or direct him. Specifically, Haraszewski relies on the following exchange between defense counsel and Coby:

"[Defense counsel]: . . . Do you ever recall [Haraszewski] trying to pose you, saying, 'Coby, come here, stand this way'? Did that ever happen?

"[Coby]: I don't remember.

"[Defense counsel]: Okay. Well, you know what I mean by 'posing,' don't you?

"[Coby]: Yes.

"[Defense counsel]: Okay. Where he would, say, put your hands a certain way or stand a certain way? Do you agree that's what the term 'poses' or 'pose' means?

"[Coby]: Yes.

"[Defense counsel]: Okay. Did that ever happen?

"[Coby]: I don't remember."

Haraszewski also points out that, during her closing argument, the prosecutor stated, "And the law again does not require [Haraszewski] to have to direct Coby to pose him. He uses him. Coby's posing. He knows Coby's under the age of 12. And that's all that that law requires."

Relying on *Hobbs, supra*, 152 Cal.App.4th 1, Haraszewski then claims that, "[i]n contrast with *Hobbs*, here the images of Coby were candid shots, not choreographed. There was no equivalent of the signs, cones, and caution tape in *Hobbs* that provided direction. Thus, there was neither directing by [Haraszewski], nor was there unintentional posing by Coby. Thus, there was insufficient evidence to support count 2."

We reject Haraszewski's claim that the evidence is insufficient to support his count 2 section 311.4(c) conviction. We have already concluded that a defendant's act of directing a child to pose or model is not an element of the crime of posing or modeling a minor in violation of section 311.4(c). Furthermore, the trial record in this case contains substantial evidence, which Haraszewski disregards, from which any reasonable jury could find beyond a reasonable doubt that, for purposes of section 311.4(c), Haraszewski posed or modeled Coby by bringing both Coby and Haraszewski's digital camera to the nude beach at San Onofre, and then took pictures and a movie of Coby when he was naked. Specifically, Coby testified that Haraszewski drove him in Haraszewski's white BMW from Sheep Hills to the beach at San Onofre, where they both took off their clothes; it was Haraszewski's idea that Coby take off all his clothes; and Haraszewski took pictures and a video of Coby in the nude on the beach. Accordingly, we affirm Haraszewski's count 2 conviction.

## IV. CLAIM OF CUMULATIVE ERROR[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V. DUPLICATING CHILD PORNOGRAPHY (§ 311.2(d)): CLAIM OF INSUFFICIENCY OF THE EVIDENCE (COUNTS 11–14)

Last, Haraszewski contends the evidence is insufficient to support his four convictions of duplicating child pornography with intent to distribute it to a minor in violation of section 311.2(d). He asserts "the prosecution charged him with four counts because [he] cut and pasted four pictures of four boys from a hard drive onto two thumb drives." Relying on *People v. Hertzig* (2007) 156 Cal.App.4th 398 [67 Cal.Rptr.3d 312] (*Hertzig*) and *People v. Manfredi* (2008) 169 Cal.App.4th 622 [86 Cal.Rptr.3d 810] (*Manfredi*), Haraszewski contends the four counts "reflected essentially the same offense fragmented into multiple counts because of multiple pictures and two thumb drives," and this court "should follow the holdings of *Hertzig* and *Manfredi* and find insufficient evidence for four separate counts because the offense cannot be so fragmented." We reject this contention.

---

[*]See footnote, *ante*, page 924.

### A. Background

The jury convicted Haraszewski of the following four counts of knowingly duplicating child pornography by moving the various images from a computer or memory card onto a Kingston thumb drive and/or an LG thumb drive, with intent to distribute the material to a minor, in violation of section 311.2(d): (1) count 11, which involved an eight-picture series of a boy in a chair that was duplicated onto both thumb drives; (2) count 12, which involved pictures of two boys on colorful sheets that were duplicated onto both thumb drives; (3) count 13, which involved a four-picture series of a boy with red stars on his shirt that was duplicated only onto the LG thumb drive; and (4) count 14, which involved pictures of Bryan that were duplicated only onto the Kingston thumb drive.

### B. Analysis

In pertinent part, section 311.2(d) makes it a crime to "knowingly . . . possess[], prepare[], publish[], produce[], develop[], *duplicate*[], or print[]" (italics added) any matter depicting a person under the age of 18 years "engaging in or personally simulating sexual conduct, as defined in Section 311.4,"[5] with "intent to distribute or exhibit to, or to exchange with, a person under 18 years of age."[6]

In support of his claim that the evidence is insufficient to support his four convictions of duplicating child pornography in violation of section 311.2(d) because (he asserts) the convictions involve "the same offense fragmented

---

[5] Section 311.4, subdivision (d)(1) provides that the term "sexual conduct" means "any of the following, whether actual or simulated: sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, whether or not any of the above conduct is performed alone or between members of the same or opposite sex or between humans and animals."

[6] Section 311.2(d) provides in full: "Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state possesses, prepares, publishes, produces, develops, *duplicates*, or prints any representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, *with intent to distribute or exhibit to, or to exchange with, a person under 18 years of age*, or who offers to distribute, distributes, or exhibits to, or exchanges with, a person under 18 years of age *any matter, knowing that the matter depicts a person under the age of 18 years personally engaging in or personally simulating sexual conduct, as defined in Section 311.4*, is guilty of a felony. It is not necessary to prove commercial consideration or that the matter is obscene in order to establish a violation of this subdivision." (Italics added.)

into multiple counts," Haraszewski relies on *Hertzig, supra*, 156 Cal.App.4th 398 and *Manfredi, supra*, 169 Cal.App.4th 622 for the proposition that "the offense cannot be so fragmented," and thus he may only be convicted of one count of duplicating child pornography.

In response, the People argue that *Hertzig* and *Manfredi* "were wrongly decided because the reliance upon victimless possessory crimes in those cases should not apply to child pornography possession." The People also argue those two cases are distinguishable because (1) section 311.11, subdivision (a) (hereafter section 311.11(a)),[7] the statute at issue in both *Hertzig* and *Manfredi*, "prohibits mere possession of child pornography, whereas section 311.2[(d), which is] at issue in this case, prohibits sending or bringing child pornography into the state for sale or distribution, or printing, preparing, publishing, producing, developing, *duplicating*, or printing child pornography with the intent to distribute to a minor" (fn. omitted, italics added) and (2) "unlike . . . possession of contraband, duplication of child pornography images involving different victims with the intent to transfer those images in violation of section 311.2[(d)] re-victimizes each child separately."

Haraszewski's reliance on *Hertzig* and *Manfredi* is misplaced because those cases are distinguishable in that (1) they involve a different code section (§ 311.11(a)), (2) the appellate courts that decided those cases were not asked to determine the issue now before this court, and (3) the illegal acts of mere possession of child pornography involved in those cases did not constitute acts of abusive or exploitive use of children in the production and distribution of child pornography that the statutory scheme of which section 311.2(d) is a part was legislatively intended to prevent.

In *Hertzig*, the defendant was convicted of 10 counts of possession of child pornography in violation of section 311.11(a) based on his possession of 30 child pornography videos found on a laptop computer seized from his residence. (*Hertzig, supra*, 156 Cal.App.4th at pp. 400–401.) On appeal, he argued that possession of multiple child pornography videos constituted a

---

[7] Section 311.11(a) provides: "Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a felony and shall be punished by imprisonment in the state prison, or a county jail for up to one year, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both the fine and imprisonment." (See *Manfredi, supra*, 169 Cal.App.4th at p. 627.)

single violation of section 311.11(a). (156 Cal.App.4th at p. 399.) The Court of Appeal agreed and reversed and dismissed nine of the 10 counts, holding that "[the defendant's] possession of multiple video images on his computer constituted a single count of possession . . . ." (*Hertzig*, at pp. 404, 399.)

In reaching this decision, the *Hertzig* court reviewed four cases, each of which involved multiple convictions for other types of possession crimes that did not involve child pornography: (1) *People v. Bowie* (1977) 72 Cal.App.3d 143 [140 Cal.Rptr. 49] (11 counts for possession of 11 identical blank checks); (2) *People v. Harris* (1977) 71 Cal.App.3d 959 [139 Cal.Rptr. 778] (nine counts for possession of nine items of property with altered serial numbers); (3) *People v. Rouser* (1997) 59 Cal.App.4th 1065 [69 Cal.Rptr.2d 563] (two counts for possession of two different controlled substances at the same location); and (4) *People v. Rowland* (1999) 75 Cal.App.4th 61 [88 Cal.Rptr.2d 900] (three counts for possession of three weapons of the same type at the same time). (*Hertzig, supra*, 156 Cal.App.4th at pp. 402–403.)

From these possession cases, the *Hertzig* court derived two distinct principles. First, the simultaneous possession of multiple items of one type of contraband constitutes a single possession violation. (*Hertzig, supra*, 156 Cal.App.4th at pp. 402–403.) Second, the simultaneous possession of multiple types of contraband in the same location also constitutes a single possession violation. (*Id.* at p. 403.) Applying these two principles to the possession of child pornography, the Court of Appeal concluded the *Hertzig* defendant's possession of multiple child pornography videos on his laptop computer constituted a single act of possession in violation of section 311.11(a), stating it (the appellate court) was "not at liberty to fragment a single crime into more than one offense." (156 Cal.App.4th at p. 403.) In reaching this conclusion, however, the *Hertzig* court also explained that "[t]he act proscribed by section 311.11 is the act of *possessing* child pornography, *not the act of abusing or exploiting children.*" (*Hertzig, supra*, 156 Cal.App.4th at p. 403, italics added.)

In *Manfredi, supra*, 169 Cal.App.4th 622, the defendant was charged with multiple counts of possession of child pornography in violation of section 311.11(a) (the same code section involved in *Hertzig, supra*, 156 Cal.App.4th 398) based on his simultaneous possession in his home of multiple images of child pornography found on different media (specifically, on "multiple computers, multiple hard drives, multiple discs, and multiple tapes" (*Manfredi*, at p. 625), rather than on one computer as in *Hertzig* (*Manfredi*, at pp. 624–625). Relying on *Hertzig*, the *Manfredi* defendant demurred to the criminal complaint, arguing he could be charged with only one count of possession of child pornography. (*Manfredi*, at p. 625.) Following *Hertzig*, the trial court sustained the demurrer without leave to amend and dismissed

all but one of the possession of child pornography counts (§ 311.11(a)), finding the defendant's possession of multiple images of child pornography in his home could not be fragmented into multiple counts. (*Manfredi*, at pp. 624, 625, 627.) The People appealed, arguing the trial court should have overruled the defendant's demurrer because the criminal complaint alleged a separate piece of physical media as to each count. (*Manfredi, supra,* 169 Cal.App.4th at p. 624.) The People relied on *In re Duncan* (1987) 189 Cal.App.3d 1348 [234 Cal.Rptr. 877] (*Duncan*), in which the Court of Appeal upheld the defendant's conviction of two counts of knowingly duplicating photographs depicting children in acts of sexual conduct in violation of former section 311.3, subdivision (a) (hereafter section 311.3(a)),[8] stating, "we are not dealing with the 'mere possession of obscene materials' . . . , but with the reproduction of child pornography . . ." (*Duncan*, at p. 1357), and finding former section 311.3(a) is "part of a statutory scheme to combat the exploitive use of children in the production of pornography." (*Duncan*, at p. 1360.)

The *Manfredi* court affirmed the dismissal of all but one of the section 311.11(a) possession-of-child-pornography counts, holding the defendant's "simultaneous possession of multiple child pornography materials at the same location is chargeable as but one criminal offense under [section 311.11(a)]." (*Manfredi, supra,* 169 Cal.App.4th at p. 624.) In reaching its decision, the Court of Appeal explained that "*Duncan* is distinguishable because it involves a different code section, the appellate court was not asked to determine the issue now before us, and it was established by the evidence that [the defendant] violated [section 311.11(a)] by his actions on two clearly separate occasions." (*Manfredi*, at p. 629.)

Here, Haraszewski's reliance on *Hertzig* and *Manfredi* is misplaced because (as noted) those cases are distinguishable in three respects. First, both cases involved section 311.11(a), which proscribes the knowing *possession* of child pornography, rather than section 311.2(d), the statute at issue here, which criminalizes the knowing *duplication* of child pornography with intent to distribute the material to a minor. Thus, *Hertzig* and *Manfredi* are inapposite because they involved a different code section.

Second, the *Hertzig* and *Manfredi* courts were not asked to determine the issue presented here of whether a defendant properly may be convicted of multiple violations of section 311.2(d) by knowingly transferring pornographic material involving children from multiple media (here, a computer and a memory card) onto multiple thumb drives found in different locations, with intent to distribute the material to a minor.

---

[8] Former section 311.3(a) provided: "A person is guilty of sexual exploitation of a child when he or she knowingly develop[s], duplicate[s], print[s], or exchange[s] any film, photograph, video tape, negative, or slide in which a person under the age of 14 years engaged in an act of sexual conduct." (Italics added; see *Duncan, supra,* 189 Cal.App.3d at p. 1353, fn. 1.)

Third, *Hertzig* and *Manfredi* are distinguishable in that each case involved a solitary act of *possessing* multiple child pornography videos, not (as the *Hertzig* court pointed out) the act of *abusing or exploiting* children. (See *Hertzig, supra*, 156 Cal.App.4th at p. 403.) Haraszewski's acts of knowingly *duplicating* child pornography in violation of section 311.2(d), unlike the criminal acts of knowingly *possessing* child pornography in violation of section 311.11(a) that were involved in *Hertzig* and *Manfredi*, constitute acts of abusive or exploitive use of children in the *production* of child pornography that the statutory scheme of which section 311.2(d) is a part was legislatively intended to prevent. The courts in California have determined that section 311.2 is part of a statutory scheme designed to combat the exploitive use of children in the production of pornography by extinguishing the market for sexually explicit materials featuring children. (*People v. Cantrell* (1992) 7 Cal.App.4th 523, 540 [9 Cal.Rptr.2d 188] (*Cantrell*); see *Cochran, supra*, 28 Cal.4th at p. 402; see also *Duncan, supra*, 189 Cal.App.3d at p. 1360.)

Regarding the merits of the issue presented here, we conclude Haraszewski was properly convicted of multiple violations of section 311.2(d). We find guidance in the recent decision in *People v. Shields* (2011) 199 Cal.App.4th 323 [131 Cal.Rptr.3d 82] (*Shields*), with respect to which the parties have submitted supplemental briefing at this court's request. In *Shields*, the Court of Appeal held that section 311.4(c), which proscribes the knowing use of a minor to produce child pornography, authorizes a separate conviction for each "piece of media created" in violation of that subdivision. (*Shields*, at pp. 330–332.) The *Shields* court reasoned in part that its holding was "compel[led]" by the legislative history of section 311.4(c). (*Shields*, at p. 332.) The Court of Appeal explained: "The Legislature's purpose in enacting section 311.4 is to prevent the abuse and sexual exploitation of children by extinguishing the market for child pornography. When a person creates multiple photographs of child pornography, the person *adds to the market* more than the person who creates one photograph of child pornography. Each additional photograph *further exploits the minor victim*, and the Legislature clearly intended to prevent that exploitation by criminalizing its creation. *The Legislature's attempt to end the exploitation of children by criminalizing the creation of each item of child pornography can be contrasted to the possession of child pornography.*" (*Shields,* at p. 332, italics added, citing *Manfredi, supra*, 169 Cal.App.4th at p. 634 and *Hertzig, supra*, 156 Cal.App.4th at p. 403.)

■ The *Shields* court's reasoning applies with equal force to violations of section 311.2(d). As already discussed, section 311.2(d) is part of the same statutory scheme that is legislatively intended to prevent the abuse and sexual exploitation of children by extinguishing the market for child pornography. (*Cantrell, supra*, 7 Cal.App.4th at p. 540; see *Cochran, supra*, 28 Cal.4th at

p. 402; see also *Duncan, supra*, 189 Cal.App.3d at p. 1360.) Section 311.2(d) specifically targets and criminalizes the knowing duplication of any matter depicting a person under the age of 18 years "engaging in or personally simulating" certain statutorily defined acts of sexual conduct with "intent to distribute or exhibit to, or to exchange with, a person under 18 years of age." As with the creation of child pornography proscribed by section 311.4, each image duplicated in violation of section 311.2(d) both adds to the child pornography and further exploits the minor victim.

For all of the foregoing reasons, we hold that section 311.2(d) authorizes a separate conviction for each act committed in violation of this subdivision. Accordingly, we reject Haraszewski's contention the evidence is insufficient to support his four section 311.2(d) convictions, and we affirm the judgment.

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and Aaron, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 9, 2012, S200405.