[No. D034916. Fourth Dist., Div. One. Oct. 25, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
MAC DAVID COCHRAN, Defendant and Appellant.

**COUNSEL**

Gregory Marshall, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle M. Boustany

and Arlene Aquintey Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KREMER, P. J.**—Mac David Cochran, following a court trial, was found guilty of 27 counts of aggravated sexual assault of a child (Pen. Code,[1] § 269), 10 counts of forcible lewd conduct with a child under 14 years of age (§ 288, subd. (b)(1)), and one count of employment of a minor to produce pornography for "commercial purposes" (§ 311.4, subd. (b)). Cochran appealed, contending there was insufficient evidence of force, violence, duress, menace, or fear of immediate and unlawful bodily injury to support the aggravated assault and forcible lewd conduct offenses; and there was insufficient evidence of commercial purposes to support the remaining count.

We rejected Cochran's arguments relating to the sufficiency of the evidence to support the aggravated assault and forcible lewd conduct offenses and affirmed the judgment to that extent. We reversed the section 311.4, subdivision (b) count on the basis there was insufficient evidence to support a finding Cochran had a commercial purpose and then, upon denial of a motion for a rehearing, modified the opinion so as to reduce Cochran's conviction of section 311.4, subdivision (b) to a conviction of section 311.4, subdivision (c), which did not require proof of a commercial purpose.

The Supreme Court granted the Attorney General's petition for review of our holding as to section 311.4, subdivision (b). The Supreme Court issued an opinion holding the evidence was sufficient to support a finding that Cochran had a commercial purpose and therefore was sufficient to support his conviction of section 311.4, subdivision (b). (*People v. Cochran* (2002) 28 Cal.4th 396 [121 Cal.Rptr.2d 595, 48 P.3d 1148].) The Supreme Court reversed and remanded for further proceedings consistent with its opinion. Consistent with the Supreme Court's opinion, we affirm the superior court judgment in toto.

### FACTS

The FBI, after receiving information that someone had posted child pornography on an Internet newsgroup, obtained the e-mail address of the individual who posted the pornography and traced the e-mail address to Cochran. A search of Cochran's home was conducted. In the home police found a videotape Cochran had made of his daughter and himself, and from which the photographs on the Internet were taken. The videotape shows Cochran directing his daughter to engage in various sexual acts such as

---

[1] All statutory references are to the Penal Code unless otherwise specified.

displaying her vaginal area to the camera, digitally penetrating herself, and penetrating herself with a dildo and a vibrator. The videotape also shows Cochran engaging in various sexual acts with his daughter, including penetrating her vagina with his finger, a dildo, a vibrator, his penis, and sodomizing her. This videotape constituted the primary evidence against Cochran.

The FBI also seized a packet of printouts from the same newsgroups to which Cochran had posted photographs of his daughter. These printouts included photographs of child pornography and subject lines stating, inter alia, "[I] did my part . . . now it['s] everyone else['s] turn [sic] no nudies," and "[I] did my part. [D]on't complain if you don't post . . . ." One contained a message stating: "Hi there. I have tons of Preeteens [sic] & Animals pics. If you wana trade big time please e-mail me . . . . P.S. here is some [samples] of the things I have. . . ." These printouts were evidently posted by individuals other than Cochran and do not contain photographs of his daughter.[2]

After he was arrested, Cochran said something to the effect of "when you're caught, you're caught." Cochran admitted posting the photographs, stating he had made the stills in the past two months prior to the search in early February 1998 and had posted the photographs on the Internet one time. He also admitted having had a sexual relationship with his daughter for the past four months.

The daughter testified the sexual relationship with her father began in the summer before the search, when she started the fourth grade. He filmed her with the video camera only one time. She was not afraid of him. Sometimes he would hurt her "[j]ust a little bit, but not that much," and when she told him it hurt, he would stop. Afterwards, Cochran would give her money, things for school or candy. He told her not to tell anybody because he would get into trouble and would go to jail. She was sometimes sad and sometimes mad about the things Cochran was doing to her.

DISCUSSION

I

*Sufficiency of Evidence—Force or Duress*

When an appellant challenges the sufficiency of the evidence to support a conviction, the appellate court reviews the entire record to see " 'whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the

---

[2]None of the screen names used by those who posted these printouts match Cochran's screen name.

defendant guilty beyond a reasonable doubt.' " (*People v. Jennings* (1991) 53 Cal.3d 334, 364 [279 Cal.Rptr. 780, 807 P.2d 1009].) We view the facts in the light most favorable to the judgment, drawing all reasonable inferences in its support. (*People v. Kelly* (1992) 1 Cal.4th 495, 528 [3 Cal.Rptr.2d 677, 822 P.2d 385]; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1236 [278 Cal.Rptr. 640, 805 P.2d 899].) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]; *People v. Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].) The test on appeal is not whether we believe the evidence established the defendant's guilt beyond a reasonable doubt, but whether " ' "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Kelly* (1990) 51 Cal.3d 931, 956 [275 Cal.Rptr. 160, 800 P.2d 516]; *People v. Rich* (1988) 45 Cal.3d 1036, 1081 [248 Cal.Rptr. 510, 755 P.2d 960].)

█ The offenses of aggravated sexual assault and forcible lewd acts on a child under the age of 14 years require proof that "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person" was used. (§§ 269, subd. (a)(3) & (4), 288, subd. (b)(1).)

"Force" as used in this context means "physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (*People v. Cicero* (1984) 157 Cal.App.3d 465, 474 [204 Cal.Rptr. 582].) A number of cases have held that if the defendant grabs or holds a victim who is trying to pull away, that is the use of physical force above and beyond that needed to accomplish the act. (See *People v. Babcock* (1993) 14 Cal.App.4th 383, 386-388 [17 Cal.Rptr.2d 688], and cases cited therein; but see *People v. Schulz* (1992) 2 Cal.App.4th 999, 1004 [3 Cal.Rptr.2d 799] [force not found when defendant grabbed victim's arm and held her while fondling her]; *People v. Senior* (1992) 3 Cal.App.4th 765, 774 [5 Cal.Rptr.2d 14] [force not found when defendant pulled the victim back when she tried to pull away from oral copulations].)[3]

"Duress" as used in this context means "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 50 [216 Cal.Rptr. 221]; *People v. Wilkerson* (1992) 6 Cal.App.4th 1571, 1578-1579 [8 Cal.Rptr.2d 392].) "The total circumstances, including the age of the victim, and [her] relationship to defendant

---

[3]*Schulz* and *Senior* are both decisions of the Sixth Appellate District. Both cases affirmed on the basis of duress. (*People v. Schulz, supra,* 2 Cal.App.4th 999, 1005; *People v. Senior, supra,* 3 Cal.App.4th 765, 774-775.)

are factors to be considered in appraising the existence of duress." (*People v. Pitmon, supra,* at p. 51.) Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family. (*People v. Senior, supra,* 3 Cal.App.4th 765, 775; *People v. Schulz, supra,* 2 Cal.App.4th 999, 1005.)

The fact that the victim testifies the defendant did not use force or threats does not require a finding of no duress; the victim's testimony must be considered in light of her age and her relationship to the defendant. Thus, in *People v. Pitmon, supra,* 170 Cal.App.3d 38, 47-48, 51, the court found sufficient evidence of duress despite the victim's testimony the defendant did not use force or violence and never threatened to hurt her. The court stated that "at the time of the offenses, [the victim] was eight years old, an age at which adults are commonly viewed as authority figures. The disparity in physical size between an eight-year-old and an adult also contributes to a youngster's sense of [her] relative physical vulnerability." (*Id.* at p. 51; see also *People v. Sanchez* (1989) 208 Cal.App.3d 721, 747-748 [256 Cal.Rptr. 446] [duress found where defendant molested eight-year-old granddaughter repeatedly over a three-year period and victim viewed defendant as a father figure]; *People v. Superior Court (Kneip)* (1990) 219 Cal.App.3d 235, 239 [268 Cal.Rptr. 1] ["Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" is relevant to determining duress].)

Cochran relies on *People v. Hecker* (1990) 219 Cal.App.3d 1238 [268 Cal.Rptr. 884], a decision by this court. In *Hecker* the defendant molested his 12-year-old stepdaughter. She testified she was never consciously afraid the defendant would harm her and that, with the exception of one incident where he held her head down during oral copulation, he never used physical force. She did not report the incidents because she felt " 'guilty' " and did not want to be responsible for breaking up her mother's marriage. (*Id.* at p. 1242.) She testified she felt " 'pressured psychologically' " and " 'subconsciously afraid.' " (*Id.* at p. 1250.) "[T]here was no evidence [the defendant] was aware of and sought to take advantage of such fear." (*Ibid.*) We stated: " 'Psychological coercion' without more does not establish duress. At a minimum there must be an implied threat of 'force, violence, danger, hardship or retribution.' " (*Id.* at pp. 1250-1251.) We rejected the People's argument that duress was established by the victim's testimony that the defendant urged her not to report the molestations because it would ruin his marriage and naval career, stating "such testimony establishes merely the threat of hardship directed at 'later disclosure of the sex acts and not [the failure to perform] the sex acts themselves.' " (*Id.* at p. 1251, fn. 7, quoting from *People v. Bergschneider* (1989) 211 Cal.App.3d 144, 154, fn. 8 [259 Cal.Rptr. 219], italics omitted.)

We believe this language in *Hecker* is overly broad. The very nature of duress is psychological coercion. A threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent. We also note that such a threat also represents a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults. Finally, we note that *Hecker* is factually distinguishable in that the *Hecker* victim was 12 years old and the defendant was her stepfather. Here, in contrast, the victim was nine years old and the defendant was her father.

██ Our review of the videotape supports a finding of duress. The victim was only nine years old. Cochran is her father with whom she resided. She was four feet three inches tall. He was five feet nine inches tall and outweighed her by about 100 pounds. The sexual acts occurred in the family home she shared with Cochran and her mother.[4] Throughout the videotape, Cochran directs and coaches the victim what to do. It is clear the daughter is reluctant to engage in the activities and, at most, acquiesces in the conduct. The victim engages in the conduct only because she is directed to do so and stops as soon as Cochran stops directing her to do a particular act. During a segment where she is orally copulating Cochran, she repeatedly gags, curls up on the sofa away from Cochran, and only continues reluctantly and as a matter of compliance with parental authority. During other parts of the videotape, she complains Cochran is hurting her. Cochran responds he is not hurting her, that he is not yet finished, or sometimes alters his activity.[5] During the videotape, the victim expresses concern about her mother returning home. Cochran discounts her concern, telling her they will hear the door open when the mother returns.

Additionally, there was the victim's trial testimony. Although she testified she was not afraid of Cochran, that he did not beat or punish her and never grabbed or forced her, she also testified she was mad or sad about what he was doing to her, that he gave her money or gifts when they were alone together, and that he told her not to tell anyone because he would get in trouble and could go to jail.

This record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given

---

[4]Cochran and the mother were married. Also living in the home was Cochran's brother.
[5]This contradicts the victim's testimony that he would stop when she told him it hurt.

consent.[6] Under these circumstances, given the age and size of the victim, her relationship to the defendant, and the implicit threat that she would break up the family if she did not comply, the evidence amply supports a finding of duress.

Since we have found duress, we need not discuss whether force was also present.[7]

No reversal is merited on this ground.

## II

*Employing a Minor to Produce Pornography for Commercial Purposes*

Cochran contends the evidence is insufficient to support his conviction of section 311.4, subdivision (b) because the evidence did not show that the photographs were produced for commercial purposes.

Section 311.4, subdivision (b) provides: "Every person who, with knowledge that a person is a minor under the age of 18 years, or who, while in possession of any facts on the basis of which he or she should reasonably know that the person is a minor under the age of 18 years, knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 18 years, or any parent or guardian of a minor under the age of 18 years under his or her control who knowingly permits the minor, to engage in or assist others to engage in either posing or modeling alone or with others for purposes of preparing any representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film, filmstrip, or a live performance

---

[6]Cochran contends that the factors noted by the trial judge (and upon which we have also relied) "exist universally between fathers (or father figures) and children" and that to adopt these factors would result in "no recognizable or enforceable distinction between subdivisions (a) and (b) of section 288, no real distinction between forcible crimes and consensual crimes" and "[t]he guarantee of due process of law will not permit [the] universal features of parent-child relationships to be substituted for a criminal law requirement of 'force' or 'duress.' " Neither the trial court's ruling nor our ruling on appeal holds that the parent/child relationship, as a matter of law, establishes force or duress. Nonetheless, as a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present. This conclusion does not eliminate the distinction between subdivisions (a) and (b) of section 288; those subdivisions may be violated by persons other than the child's parent or one having parental authority and under circumstances where the victim truly consents, e.g., a 13-year-old girl consenting to engage in sexual acts with her boyfriend.

[7]We note that most of the acts do not involve the use of any force, or even restraint of the victim, since the victim was being compliant.

involving, sexual conduct by a minor under the age of 18 years alone or with other persons or animals, *for commercial purposes*, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years." (Italics added.)

In *People v. Cochran, supra,* 28 Cal.4th 396, 406-407, the Supreme Court held that the conduct involved here, i.e., the posting of pornographic photographs of a child with an intent to trade for other pornographic photographs, was encompassed within the statutory definition of "commercial purposes" and rejected an analysis focusing solely on whether the defendant had "financially profited from his Internet posting, trading, and videomaking enterprise." The Supreme Court explained: "[T]he commercial purpose was shown by the planning and effort required to create the images that appear on the videotape, including various lighting techniques to enhance the quality of the video, and the defendant's possession of other equipment that would further his goal of producing pornography for commercial purposes. The commercial purpose was also shown by defendant's subsequent posting of still photographs from the videotape on the Internet. As the Attorney General observes, the posting was done to attract the attention of pedophiles who trade and market child pornography and who could not be reached by other means. Defendant's attempt to attract broad attention to the still images from the videotape when he posted them on the Internet strongly suggests that at the time he produced the tape defendant intended to commercialize it." (*Id.* at p. 405.)

We are bound by this analysis and may not reach a contrary result. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Accordingly, we affirm Cochran's conviction of section 311.4, subdivision (b).

DISPOSITION

The judgment is affirmed.

Benke, J., and McDonald, J., concurred.