Filed 2/18/26  Souza v. Ratto CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANITA SOUZA, as Trustee, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>RAY RATTO, JR., et al.,<br><br>Defendants and Respondents. | F088092<br><br>(Super. Ct. No. CV-21-003139)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  John Mayne, Judge.

Law Office of Henry D. Nunez and Henry D. Nunez for Plaintiff and Appellant.

Fennemore, Mark D. Epstein and Michele C. Kirrane for Defendants and Respondents.

-ooOoo-

Anita Souza, Trustee for the Steve Souza & Anita Souza Revocable Living Trust, appeals from an order entered in favor of Ray Ratto, Jr., Ratto Bros., Inc., Ronald Ratto, and Lake Bottom, LLC (collectively, Ratto) granting Ratto's motion for entry of

judgment pursuant to a settlement. (Code Civ. Proc., § 664.6.)[1] The oral settlement was intended to resolve a dispute between Souza and Ratto, who are owners of adjoining parcels of land, over Souza's access to Ratto's property pursuant to a recorded easement. After the settlement conference, the parties exchanged proposed written settlement agreements, but they could not agree on the terms. In granting Ratto's motion, the trial court ordered Souza to "sign the settlement agreement proposed by the Ratto Defendants which reflect the terms of the settlement reached by the parties" at the settlement conference.

On appeal, Souza contends: (1) the trial court failed to make express findings in its order granting the motion; (2) there is insufficient evidence to support findings that the parties had a meeting of the minds and agreed to all material terms in the proposed written settlement agreements; and (3) one of the settlement terms was uncertain. We conclude that Souza's arguments are meritless. Nevertheless, because the order erroneously fails to set forth the material settlement terms, we amend the order to include an appealable judgment, reverse that judgment, and remand with directions to the trial court to enter a formal judgment setting forth the material terms of the settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

This case concerns a recorded agricultural drainage easement that Souza owns along the southern boundary of the adjacent parcels of agricultural real property that lie to the west of her parcels, which Ratto owns. The recorded easement grants Souza a drainage easement, which grants her the right to maintain a drainage ditch along the southern boundary of Ratto's parcels which drains excess water from her property to the Stanislaus River. The recorded easement also contains an incidental easement allowing access across Ratto's property to maintain the drainage ditch and a roadway easement

---

[1]     Undesignated statutory references are to the Code of Civil Procedure. Although the trial court failed to enter a formal judgment, we exercise our discretion to amend the order to include an appealable judgment, as stated *post*.

2.

allowing access across an existing dirt road.  Each property owner had a duty to maintain the drainage and roadway easements and the parties were to equally share the costs and expenses of reasonable repair and maintenance.

***This Lawsuit***

A dispute arose between Souza and Ratto concerning Souza's ability to exercise her rights under the easement.[2]  Consequently, in June 2021, Souza initiated this action against Ratto and other defendants.  Her first amended complaint, filed in March 2023, alleged the following causes of action:  (1) quiet title to appurtenant easement; (2) quiet title to prescriptive easement; (3) quiet title to easement by necessity; (4) quiet title to implied easement; (5) quiet title to equitable easement; (6) declaratory relief; (7) damages from breach of express easement; and (8) injunctive relief.  Souza alleged the easement agreement authorized her to access and use the easements and Ratto interfered with her ability to do so by refusing her entry onto the property.

***Mandatory Settlement Conference***

A mandatory settlement conference was held on October 16, 2023, before the Honorable John R. Mayne.[3]  There is no reporter's transcript of the conference as a court reporter was not present.  The minute order of the hearing (the settlement minute order) states that Ratto reached a settlement and lists the following terms:  (1) "Defendants Ray Ratto, Ronald Ratto, Brandon Ratto, Ratto Brothers Inc have reached a settlement. Defendants are to pay Plaintiff $30,000 total"; (2) "Parties are to meet and confer regarding the drainage"; and (3) "Parties are to act in good faith.  Defendant's cannot

---

[2]     The dispute was over swing gates Ratto installed along three access points to their parcels.  The gates remained open during business hours but were closed and locked at night.  Ratto gave Souza a key to the gates, but she apparently lost it.  When Ratto offered her a new key, she refused it.

[3]     The case was assigned to Judge Mayne for all purposes.  The parties, through their attorneys, signed a consent to allow Judge Mayne to confer separately with each party during the settlement conference as required by Code of Judicial Ethics Canon 3 B(12).

3.

reasonably oppose the repair. Each side is to pay 50% of each drainage issue to be resolved. Plaintiff is to give notice to Defendants of any future repair work." The court set a motion to dismiss for December 20, 2023.

***The Parties' Efforts to Memorialize the Settlement in Writing***

Ratto's counsel, Mark Epstein, prepared a proposed written settlement agreement and release, which he emailed to Souza's counsel, Henry D. Nunez, on October 24, 2023 (Ratto's October agreement). The October agreement contained the following provisions: (1) Ratto would be required to deliver the $30,000 payment and a new key to the security gates to Souza; (2) Souza would dismiss the lawsuit against Ratto; (3) Souza would give Ratto advance notice of her intent to enter Ratto's property or of any condition with the drainage system that she believed required maintenance or repair; (4) Ratto could decide if they or a third party would perform the requested maintenance work, and if they decided a third party should do so, they would obtain a cost estimate with the parties to equally share the cost; and (5) if Souza did not agree with the cost estimate, she could obtain her own cost estimate and the parties would discuss in good faith the best course of action to address the maintenance or repair issue. It also included a release, a Civil Code section 1542 waiver, and other provisions such as no admission of liability, the binding effect of the agreement, costs, governing law, representation by and consultation with counsel, construction of the agreement, authorization, amendments, execution, severability, headings and captions, attorney fees, and entire agreement.

Epstein sent Nunez another email on October 30, 2023, as he had not heard from Nunez. According to Epstein, Nunez called him that day to say he was expecting to speak with Souza and her sons within the next week or two and to have them sign the settlement agreement, but he could not deal with the matter because he was preparing for trial.

Epstein emailed Nunez again on November 17, 2023, as he had not heard from Nunez. Epstein asked Nunez to sign Ratto's October agreement so the settlement could

4.

be completed before the December 20, 2023 hearing.  Receiving no response, Epstein emailed Nunez again on November 28, 2023.  Nunez responded the following day that he could get back to Epstein by Thursday.

On December 12, 2023, Nunez sent Epstein a revised version of the settlement agreement with a letter explaining the revisions (Souza's December revision).  With some minor modifications, Nunez accepted the provisions concerning settlement payment, the gate keys, dismissal, the releases and Civil Code section 1542 waiver.  On the terms concerning notice of maintenance or repairs, while Nunez agreed that Souza would give Ratto advance notice of her intent to enter Ratto's property or of any condition with the drainage system that she believed required maintenance or repair, he revised the proposed agreement to provide that either party could make repairs or improvements costing less than $5,000, but if the repairs were over that amount, either party could determine whether a third party would perform the requested maintenance or repair and provide a cost estimate to the other party.  The revisions further provided that the parties would act in good faith and, if they could not agree, the lower bonified bid would be selected, and they would equally share in the cost of the work.  Nunez asserted these revisions did not change the intent of the settlement.  Nunez stated he would not be able to get Souza's signature until she returned from Mexico on December 20, 2023.

Epstein emailed Nunez the following day stating that while Nunez's revisions "were quite extensive" and significantly changed "Section 3 of the agreement," he accepted many but not all the proposed edits, which Ratto would review.  He would send a substantive response to Nunez's letter once he heard from Ratto.

On December 14, 2023, Souza filed an opposition to the trial court's motion to dismiss in which she requested a 30- to 60-day continuance so the parties could complete the settlement agreement.  Nunez represented that:  (1) the parties settled the dispute and recited the major terms of the settlement on the record on October 16, 2023; (2) Epstein sent the October agreement to Nunez; (3) changes were made to the proposed agreement

but not to the major terms recited in open court; (4) additional time was needed for Souza to review, approve, and sign the settlement agreement since Souza was not scheduled to return from Mexico until December 20, 2023; and (5) he sent a revised settlement agreement to Epstein on December 12, 2023, which Ratto was reviewing.

The hearing on the trial court's motion to dismiss was held on December 20, 2023. The trial court continued the matter to February 8, 2024. Epstein emailed Nunez after the hearing. Epstein stated Ratto's October agreement contained the terms of the settlement agreement the parties agreed to in open court at the mandatory settlement conference, and while Souza's December revision contained significant edits that materially changed the agreement's tenor, Ratto accepted most of them. Epstein attached a further revised agreement which he asserted contained the terms the parties agreed to in court and that Ratto was willing to accept (Ratto's December revision).[4] Epstein urged Nunez not to sit on the matter given the court's displeasure that the parties had not finalized the settlement agreement and dismissed the complaint.

Epstein sent follow-up emails to Nunez several times in January 2024 but received no response. On February 2, 2024, Ratto filed a statement for the February 8, 2024 hearing on the trial court's motion to dismiss. Ratto asked the trial court to dismiss the case against them with prejudice because, despite their efforts to finalize a written settlement agreement, Souza and her attorney refused to engage in good faith communications, in part, because they failed to respond to Ratto's December revision.

---

[4] Ratto's December revision kept the notice of maintenance and repairs provision in their October agreement—that Souza would give Ratto advance notice of her intent to enter their property or of any condition with the drainage system that she believed required maintenance or repair; Ratto could decide if they or a third party would make the requested maintenance work, and if they decided a third party should perform the work, they would obtain a cost estimate with the parties to equally share the cost; and if Souza did not agree with the cost estimate, she could obtain her own cost estimate and the parties would discuss in good faith the best course of action to address the maintenance or repair issue.

On February 2, 2024, apparently after Ratto filed their statement, Nunez responded with a further revised draft of the settlement agreement (Souza's February revision). In a letter accompanying Souza's February revision, Nunez asserted Ratto's October agreement and December revision went beyond the terms recited in court and they were attempting to rewrite the easement agreement. Nunez claimed his revision did not change the settlement terms recited in open court per the settlement minute order, which were: (1) Ratto is to pay Souza $30,000 total, with the term that Ratto was to provide Souza with a key "omitted from the minute order"; (2) the parties are to meet and confer regarding drainage; (3) the parties are to act in good faith; (4) Ratto cannot unreasonably oppose repair; (5) each side is to pay 50 percent of each drainage issue to be resolved; and (6) Souza is to give Ratto notice of any future repair work. Nunez pointed out these terms in Souza's February revision were located in the paragraph concerning notice of maintenance and repairs.

On February 5, 2024, Souza filed a status report for the February 8 hearing, in which she stated she submitted a signed settlement agreement to Epstein on February 2, 2024, which Ratto was reviewing. Souza asserted the parties had been attempting to reach an agreement in good faith and any delay was not unreasonable. Souza stated she would accept the settlement minute order's content to the extent it was enforceable with the modification that Ratto provide gate keys.

Apparently after Souza filed the status report, Epstein responded to Nunez by email with a redlined version of the settlement agreement that highlighted Nunez's proposed edits. Epstein noted that for the first time, Nunez removed the Civil Code section 1542 waiver and changed the agreement to state Souza was not waiving unknown claims or any rights and benefits under section 1542. Epstein objected to this revision, asserting it was a "very material change to the settlement terms we discussed on October 16," and a section 1542 waiver was a fundamental term of every settlement agreement he had been involved in. Epstein asserted that if Nunez and Souza insisted on

7.

removing the section 1542 waiver, "then we don't have a settlement agreement" and he would ask the court to dismiss the action against Ratto.

At the February 8, 2024 hearing, the trial court advised Ratto to file a motion to enforce the settlement, which it set for hearing on March 21, 2024.[5]  According to Nunez, at the hearing Ratto indicated the matter would not go forward unless a Civil Code section 1542 waiver was agreed to, the trial court suggested they try to settle the matter, and the court provided a hearing date in the event a settlement was not reached.

On February 12, 2024, Nunez sent another revised draft agreement to Epstein, which included a revised release provision and restored the Civil Code section 1542 waiver provision.  Ratto, however, objected to the proposed edits on two settlement terms:  (1) the keys to the gates; and (2) notice of repairs.  To compromise and eliminate one of those issues, Ratto decided to move the gates so Souza would have unfettered access to the easement without having to use gate keys.

### Ratto's Motion to Enforce the Settlement

On February 22, 2024, Ratto filed a motion to enforce the settlement pursuant to section 664.6, supported by Epstein's declaration.  Ratto asked the trial court to enforce the settlement terms reached at the October 16, 2023 mandatory settlement conference and to "resolve remaining disputes concerning the settlement terms agreed upon by the parties."  Ratto claimed Souza had "unreasonably delayed settlement agreement communications and proposed last minute revisions that were outside the parties' agreed settlement."  Ratto argued the parties entered into an enforceable settlement, which the court approved on October 16, 2023, and was authorized to enforce under section 664.6.

Ratto asserted the trial court could resolve factual disputes relating to the oral agreement.  Ratto stated they decided to move the gates in the spirit of compromise so

---

**5**    The appellate record does not contain a minute order or reporter's transcript of the February 8, 2024 hearing.

8.

Souza would have unfettered access to the easement without the need for gate keys, but Souza's proposed language for the notice of maintenance provision was problematic because it required Ratto to give notice to Souza whenever they wished to perform repairs on their own property. Ratto claimed they were not legally obligated to give such notice, and that issue was not discussed at the settlement conference. Rather, only Souza needed to provide notice of her intent to enter Ratto's property or that the easement needed maintenance. Ratto asked the court to resolve this dispute by accepting their proposed language and enforce their proposed settlement agreement, which included maintenance language within the terms of the parties' settlement. Ratto asked the court to grant their motion to enforce Ratto's last proposed settlement agreement.[6]

Epstein's declaration set forth details of the case's history, including the mandatory settlement conference, and the parties' lengthy negotiations over the language of the written settlement agreement. Epstein asserted he was present at the October 16, 2023 mandatory settlement conference and the parties reached a settlement with the material terms stated on the record before the trial court and issued in the court's settlement minute order.

Souza filed an opposition to the motion, supported by Nunez's declaration. Souza argued Ratto's proposed written agreements were unenforceable because: (1) there was no transcript of the settlement terms to enforce as a court reporter was not present at the hearing; and (2) the settlement minute order did not contain certain provisions in Ratto's proposed settlement agreements, such as those pertaining to the gate keys, notice of

---

[6]    While Ratto did not identify their "last proposed settlement agreement," the last settlement agreement Ratto proposed that is referred to in Epstein's declaration accompanying Ratto's motion was their December 20, 2023 revised version of the settlement agreement.

future maintenance and repairs, and a release provision under Civil Code section 1542,[7] and the parties did not stipulate to these terms before the court.

Souza explained that while the parties did not stipulate to a Civil Code section 1542 mutual release and waiver, she agreed to that provision to show good faith, but Ratto did not accept her proposed settlement agreement. Souza asserted that in all other respects, Ratto's proposed settlement agreement was not enforceable or acceptable, as it contained terms outside those the parties contemplated and which Souza did not agree to. Souza stated she was willing to accept the settlement minute order's terms, with the addition of the term requiring Ratto to provide gate keys to Souza, and she would dismiss the complaint with prejudice as to Ratto on payment of the amount agreed to and delivery of the keys. Souza asked the trial court to deny Ratto's motion.

In his declaration accompanying the opposition, Nunez admitted "[a] [s]ettlement was agreed upon and recited in court." Nunez believed a court reporter would be present to transcribe the settlement terms, but since a court reporter was not there, he was unable to get a court transcript. Nunez asserted the settlement minute order was incomplete, as the requirements for Ratto to provide gate keys to Souza and the dismissal of the complaint with prejudice after signing the settlement agreement were recited at the hearing but omitted from the settlement minute order. Nunez claimed the Civil Code section 1542 waiver and the release or mutual release were not recited in court. Nunez asserted Souza's February 2, 2024 draft settlement agreement included the terms of the settlement minute order, and he identified other terms that were clarified or corrected.

In their reply, Ratto stated that on February 21, 2024, they sent another revised settlement agreement to Souza which not only incorporated most of Souza's requested edits but reflected Ratto's decision to move the security gates so they no longer blocked

---

[7]     Souza asserted the settlement minute order was incomplete, as the provision requiring Ratto to provide her with a gate key, which was a material term of the settlement, was omitted.

10.

or impeded Souza's access to the easement area and would provide her with unfettered access to the easement. Ratto could not understand why Souza would object to this, as it would put her in a better position than if the gates were left in place and a key was needed. Ratto asserted that while Souza claimed their proposed settlement agreement contained provisions that were outside the terms reflected in the settlement minute order, a review of the proposed settlement agreement indicated there were no pending issues with these provisions that prohibits execution of the agreement.

Ratto noted Souza was adamant that the settlement agreement language strictly adhere to the settlement minute order, but the language of the proposed maintenance provision included in paragraph four of Souza's February 12, 2024 proposed agreement, is not in the settlement minute order. Ratto objected to being required to provide written notice to Souza any time they wished to perform repairs to their own property, noting that this was not a material term agreed to during the settlement conference.

Finally, Ratto contended that because both parties agreed to the terms set forth in the settlement minute order and their settlement agreement embodied the material terms of the settlement minute order, enforcement of the settlement was appropriate. Ratto asked the court to grant its motion to enforce the last proposed settlement agreement dated February 21, 2024.

In his declaration submitted in support of the reply, Epstein stated he emailed a revised settlement agreement to Nunez on February 21, 2024, which reflected Ratto's decision to move the easement gates and give Souza unfettered access to the easement. Epstein further stated the revised agreement also incorporated many of Souza's requested edits. Epstein's email to Nunez and the clean, redlined version of the February 21, 2024 revised agreement were attached to Epstein's declaration.

Epstein explained in the email that because Souza would always have access to the easement area, the need to give prior notice to Ratto of her intent to access the easement was eliminated and she need only give notice if she intended to have maintenance or

11.

repair work done to the drainage ditch or any other portion of the easement. Epstein complained that Nunez kept adding a requirement for Ratto to give Souza notice if they intended to do any maintenance or repair work to the easement area. Epstein stated Ratto would not agree to such a term as it was not required under California law, the parties never discussed or agreed to it, and the settlement minute order did not contain the term and instead only required Souza to give notice to Ratto if she intended to do maintenance or repair work. According to Epstein, Nunez did not respond to this email.

The hearing on the motion was held on March 21, 2024, before Judge Mayne. A court reporter was not present. The minute order of the hearing (the motion minute order) states that after counsel for the parties presented their oral arguments, the trial court granted the motion and stated it would sign the order submitted on February 22, 2024, which Ratto submitted with their moving papers on the motion. The order, which the trial court signed on March 21, 2024, and filed on March 22, 2024, stated: (1) "[p]laintiff shall sign the settlement agreement proposed by the Ratto Defendants, which reflect the terms of the settlement reached by the parties on October 16, 2023"; and (2) "[t]he Court shall retain jurisdiction under Code [of] Civil Procedure Section 664.6 until the settlement agreement is executed" (the March 21 order). Ratto served notice of entry of the order on Souza on March 26, 2024.

On April 2, 2024, Souza filed a request for statement of decision in which she asked the trial court to address numerous factual and legal issues. That same day, Ratto filed an opposition to the request, in which they stated that following the hearing, they sent requests to Souza to sign the settlement agreement. Ratto asked the trial court to deny the request, arguing it was improper because section 664.6 does not require a statement of decision. It does not appear the trial court took any action on Souza's request.

On May 22, 2024, Souza filed a notice of appeal from the notice of entry of order, filed on March 26, 2024, entering the March 21, 2024 order granting Ratto's motion to enforce the settlement.

## DISCUSSION

### I.  Section 664.6 and the Standard of Review

In 2023 and 2024, when the settlement conference took place and the motion to enforce the settlement was heard, section 664.6, subdivision (a) provided:  "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.  If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."  (Former § 664.6, subd. (a), as amended by Stats. 2020, ch. 290, § 1 & Stats. 2023, ch. 478, § 12.)[8]

The statute provides a summary procedure to enforce a settlement agreement without a new lawsuit.  (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182 (*Hines*); accord, *Madrigal v. Hyundai Motor America* (2025) 17 Cal.5th 592, 600, fn. 3; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.)  "Thus, 'settlement agreements pursuant to section 664.6 … result not only in contractual agreements but also in judgments that conclusively resolve the issues between the parties.'  [Citation.]  A settlement under this provision 'is not incidental to the management of the lawsuit; it ends the lawsuit.' "  (*Madrigal v. Hyundai Motor America* (2023) 90 Cal.App.5th 385, 402.)  If the trial court " 'determines that the parties entered into an enforceable settlement, it should grant the motion and enter a formal judgment

---

[8]    Section 664.6 was further amended effective January 1, 2025.  (Stats. 2023, ch. 478, § 12.)  Neither party asserts any of the changes affect this appeal.

pursuant to the terms of the settlement.' " (*Greisman v. FCA US, LLC* (2024) 103 Cal.App.5th 1310, 1321.)

When hearing a motion to enforce a settlement agreement under section 664.6, the trial court acts as the trier of fact. (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889.) The trial court "must determine whether the parties entered into a valid and binding settlement." (*Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.) In so doing, the trial court may receive evidence, determine disputed facts, interpret (but not add to) the terms of the agreement, and enter judgment upon those terms. (*Weddington Productions, Inc. v. Flick*, *supra*, 60 Cal.App.4th at p. 810; see *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905; *Khavarian Enterprises, Inc. v. Commline, Inc.* (2013) 216 Cal.App.4th 310, 328–329.) " '[W]hen issues relating to the binding nature or terms of the settlement are in dispute,' section 664.6 empowers the trial court 'to resolve these disputed issues and ultimately determine whether the parties reached a binding mutual accord as to the material terms.' " (*Eagle Fire & Water Restoration, Inc. v. City of Dinuba* (2024) 102 Cal.App.5th 448, 470 (*Eagle Fire*); accord, *Skulnick*, at p. 889 ["Section 664.6's 'express authorization for trial courts to determine whether a settlement has occurred is an implicit authorization for the trial court to interpret the terms and conditions to settlement.' "].)

On appeal, Souza bears the burden of showing the trial court erred in granting Ratto's motion. (*Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1398.) A trial court judgment is presumed correct, and when a trial court "has made no specific findings of fact, it is presumed that the court made such implied findings as will support the judgment." (*Hall v. Municipal Court* (1974) 10 Cal.3d 641, 643.) "The trial court's factual findings on a motion to enforce a settlement under section 664.6 'are subject to limited appellate review and will not be disturbed if supported by substantial evidence.' " (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253 (*Critzer*); accord, *Gauss v. GAF Corp.* (2002) 103 Cal.App.4th

14.

1110, 1116.)  We consider de novo any question of law, including the statute's construction or application.  (*Critzer*, at p. 1253; *Gauss*, at p. 1116.)  Thus, whether the trial court's judgment complies with section 664.6 is an issue of law we review de novo.  (See *Greisman v. FCA US, LLC*, *supra*, 103 Cal.App.5th at p. 1322 ["Legal questions, such as the proper interpretation of section 664.6 or whether the granting of the motion satisfied the strict requirements of the statute, are reviewed de novo"].)

"Consistent with the venerable substantial evidence standard of review, and with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement."  (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.)

## II.    Appealability

As a threshold matter, we must deal with the issue of appealability of the March 21, 2024 order, which Ratto raises in their appellate brief.  The March 21, 2024 order, which Souza appeals from, does not purport to be a judgment, nor does it order entry of judgment.  Rather, it granted Ratto's motion to enforce the settlement agreement and ordered Souza to sign Ratto's proposed settlement agreement that reflected "the terms of the settlement reached by the parties on October 16, 2023."  Moreover, the order stated the trial court would retain jurisdiction until the settlement agreement was executed.

An order granting a motion under section 644.6 is not an appealable order because it is not included among the appealable interlocutory orders listed in section 904.1. (§ 904.1, subd. (a)(1)-(14).)  Section 644.6, however, authorizes a trial court to enter a formal judgment pursuant to the settlement's terms upon the granting of a motion to enforce the settlement.  (*Hines*, *supra*, 167 Cal.App.4th at p. 1182; § 664.6, subd. (a).)  A judgment entered pursuant to section 664.6 is appealable.  (*Critzer*, *supra*, 187 Cal.App.4th at p. 1251.)

15.

Where, as here, there is no formal entry of judgment, we "may amend an order to include a judgment if the effect of the order is to finally determine the rights of the parties in the action." (*Hines*, *supra*, 167 Cal.App.4th at p. 1183; accord, *Critzer*, *supra*, 187 Cal.App.4th at pp. 1251–1252.) We conclude the effect of the March 21, 2024 order was to finally determine the parties' rights by enforcing the settlement agreement, as it left no issue for future consideration by the court except the fact of compliance or noncompliance with the order's terms, and did not contemplate further judicial action other than the order's enforcement. Accordingly, "we will amend the order to include an appealable judgment so to expedite appellate review." (*Hines*, at p. 1183.)[9]

## III. Express Findings

Souza contends the trial court exceeded its jurisdiction when it granted the motion to enforce the settlement agreement because it did not expressly find that the parties entered into a binding oral settlement agreement and agreed to all material settlement terms. She asserts that without making these express findings, the order granting the motion to enforce the settlement agreement and the settlement minute order must be vacated as void.

Souza's argument is premised on the minute and written orders of the March 21, 2024 hearing on Ratto's motion to enforce the parties' settlement, which state that the motion is granted and ordered Souza to sign Ratto's proposed settlement agreement. Souza, however, has not provided a record of what occurred at the hearing. There is no reporter's transcript because a court reporter was not present, and Souza has not

---

[9] The trial court's written order granting the motion to enforce the settlement requires Souza to "sign the settlement agreement proposed by the Ratto Defendants, which reflect the terms of the settlement reached by the parties on October 16, 2023." The order, however, does not identify which of the three written agreements Ratto proposed—their October agreement, December revision, or February revision—was the one that reflected the terms of the parties' settlement. The parties presume it is Ratto's February revision, so we will do the same.

16.

submitted an agreed or settled statement, and it is too late for her to do so. (See *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8–9; Cal. Rules of Court,[10] rules 8.130(h)(1) [if designated proceedings cannot be transcribed, a party may substitute an agreed or settled statement], 8.134(b)(2) [agreed statement must be filed "within 40 days after filing the notice of appeal"], 8.137(b)(1)(A) [where the designated oral proceedings are not reported, appellant's election to use a settled statement must be specified in the notice designating the record on appeal].)

Because we do not have a full record of the trial court's reasoning before us, we are unwilling to accept the trial court's written and minute orders as conclusive proof it did not make express findings.[11] "It is a fundamental principle of appellate review that we presume that a judgment or order is correct. [Citations.] Moreover, it is the appellant's burden of providing a record that establishes error, and where the record is silent, we must indulge all intendments and presumptions to support the challenged ruling. [Citations.] From these principles, courts have developed the doctrine of implied findings by which the appellate court is required to infer that the trial court made all factual findings necessary to support the order or judgment." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1271 (*Laabs*).) "Where the party fails to furnish an adequate record of the challenged proceedings, his claim on appeal must be resolved against him." (*Rancho Santa Fe Assn. v. Dolan–King* (2004) 115 Cal.App.4th 28, 46.) Without either a reporter's transcript or a substitute from which to glean what was said at the hearing, we are bound by the presumption the order was correct, and Souza has

---

[10] Further references to rules are to the California Rules of Court.

[11] Souza argues in her reply brief that she did not need to provide a transcript of the March 21, 2024 hearing on Ratto's motion to enforce the settlement agreement because evidence was not received at the hearing. Even so, without a transcript or suitable replacement that shows whether the trial court made express findings on the motion, we cannot presume that it failed to do so.

17.

"forfeited this argument on appeal." (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259.)

Even if the trial court failed to make express factual findings, there is nothing in section 664.6 that requires an order granting a motion to enforce a settlement agreement to include express findings.[12] In the absence of a statutorily imposed requirement for a trial court to express its reasons or factual determinations on the record, findings of fact generally are not required in connection with law and motion matters. (*Laabs*, *supra*, 163 Cal.App.4th at p. 1272.) Souza does not point to any authority that requires a trial court to depart from the general rule and express its factual determinations on the record or in an order. Accordingly, we presume in granting the motion, the trial court determined the parties entered into a valid and binding settlement, and that they agreed to all material settlement terms.

## IV.    Uncertainty

Souza argues for the first time that the term in the settlement minute order—the "[p]arties are to meet and confer regarding the drainage"—is uncertain and therefore unenforceable. Whether an agreement's terms are reasonably certain depends on whether they " ' "provide a basis for determining the existence of a breach and for giving an appropriate remedy." ' " (*Eagle Fire*, *supra*, 102 Cal.App.5th at p. 468.) "Applying this contractual certainty requirement has been described as involving two inquiries: ' "[F]irst, did the parties intend to contract and second, is there a reasonably certain basis for giving an appropriate remedy." ' " (*Ibid*.) Uncertain agreements are not enforceable. (*Ibid*.)

In this case, there is no indication the trial court was ever asked to determine if any terms of the settlement agreement were uncertain, let alone that it resolved any such

---

[12]    The case Souza relies on, *Hines*, *supra*, 167 Cal.App.4th 1174, does not state that the trial court is required to make express factual findings when granting a motion to enforce a settlement under section 664.6. (See *Hines*, at pp. 1182–1183.)

18.

question.  In her opposition to Ratto's enforcement motion, Souza argued Ratto's written settlement agreement was unenforceable because it contained terms not reflected in the settlement minute order.  She did not argue that any of the terms in the settlement minute order were indefinite or uncertain.  Rather, she asserted:  (1) she would "accept the terms as written in the court minute order of October 16, 2023 with the addition of Defendant Ratto to provide the keys to the gates to Plaintiff"; (2) on receipt of Ratto's payment and delivery of the gate keys, she would dismiss the action as to Ratto with prejudice; and (3) "[o]therwise the terms of settlement as proposed by Defendants is not enforceable."  She did not mention the uncertainty of any terms in the settlement minute order.

Because the legal argument now advanced on appeal was not presented to the trial court, it is forfeited.  " 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.  This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.' " (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) " 'Any other rule would permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware.' " (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1158–1159.)

Souza claims she raised the issue of uncertain terms in her opposition to the motion to enforce the settlement, citing to Nunez's declaration and attached exhibits submitted in opposition to the motion.  She does not point to precisely where in those documents she raised the issue.  We have reviewed Nunez's declaration, in which Nunez explained the February 2, 2024 agreement he sent to Ratto included all the terms of the settlement minute order, and while he asserted the proposed agreement clarified and corrected certain terms, including the meet and confer requirement concerning the repairs or maintenance to the drainage system, he did not assert any terms in the settlement minute order were uncertain.  Significantly, Nunez stated that Souza would "accept the

19.

terms as written in the court minute order, with the addition of Ratto Defendants to provide the keys to the gates." He did not assert the terms in the settlement minute order were uncertain. Therefore, the issue is not properly before us, and we will not consider it.

## V.     Enforceability of the Settlement Agreement

Souza claims the only settlement terms the parties recited before the court at the settlement conference are those set out in the settlement minute order and the additional requirement for Ratto to give Souza the gate keys. Consequently, she argues, all other material terms set out in the proposed written settlement agreements the parties exchanged were merely unaccepted offers and not part of the parties' oral settlement. She lists six terms in the February 21, 2024 written settlement agreement that she contends are material and were not included in the parties' oral settlement.[13]

As we have stated, when addressing a section 664.6 motion, the trial court must decide whether an enforceable settlement agreement was formed and, if so, the terms or scope of the settlement. (*Eagle Fire*, *supra*, 102 Cal.App.5th at p. 462.) As discussed above, we presume that, in granting Ratto's motion, the trial court found the parties entered into an enforceable settlement agreement and the terms were those the parties

---

[13]     Souza asserts Ratto's February revision contains the following terms that she argues are material and that she did not agree to: (1) the provision for moving the gates and confining her activities to the easement area or existing public right-of-way; (2) use of the term "Drainage System," which the February revision defined as "[t]he drainage ditch and related apparatus divert water from the Souza Property into an underground pipeline that runs beneath another parcel of property that is owned by Patrick Bert and/or State of California to a point where the underground pipeline empties the runoff water into the Stanislaus River"; (3) the term "Easement area itself" in the paragraph concerning notice, as the term was uncertain and could include all of Souza's easement rights; (4) the provision for granting Ratto sole authority to make decisions regarding repairs and requiring only Souza to provide notice of needed repairs or maintenance; (5) the release and Civil Code section 1542 waiver provisions; and (6) the statement in the "Entire Agreement" provision which states the agreement "supersedes all prior and contemporaneous oral and written agreements," as the term could be interpreted as superseding the recorded easement.

20.

reached at the settlement conference. While the parties concur they orally agreed to settle the action, they disagree as to what the mutually agreed upon terms of that oral agreement are.

" '[W]hen issues relating to the binding nature or terms of the settlement are in dispute,' section 664.6 empowers the trial court 'to resolve these disputed issues and ultimately determine whether the parties reached a binding mutual accord as to the material terms.' " (*Eagle Fire*, *supra*, 102 Cal.App.5th at p. 470.) "[T]he trial judge may receive evidence such as oral testimony and declarations, consult his memory if he heard the settlement, determine disputed facts, apply governing law, and enter the terms of a settlement agreement as a judgment." (*Id*. at p. 469.) As we have explained, "a trial court's factual findings concerning whether a settlement agreement explicitly defined the material terms, and whether the parties expressly acknowledged their understanding of and agreement to be bound by those material terms, are reviewed for substantial evidence." (*Id*. at p. 470.) Trial courts are "empowered to enforce oral settlements made before them even where there is no reporter's transcript of the oral proceedings." (*Id*. at pp. 462–463.)[14]

Although the parties attempted to reduce the oral agreement to writing, there is no evidence to suggest they did not intend the oral stipulation to be binding unless and until a formal written agreement was executed. (*Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1430 ["nothing tentative" about binding effect of oral agreement where attorneys read the settlement into the record and ensured each party agreed, even absent written agreement].) The parties' postagreement disputes have no bearing on the enforceability of the parties' oral agreement to the settlement terms before the court.

---

[14] As we have explained, "[i]n 1993, the Legislature amended [section 664.6] to refer to stipulations made 'orally on the record before the court,' " but "[i]n 1994, the Legislature reversed course and deleted the phrase 'on the record.' " (*Eagle Fire*, *supra*, 102 Cal.App.5th at p. 462.)

(*Id*. at p. 1431 ["If difficulties or unresolvable conflicts arise in drafting the written agreement, the oral settlement remains binding and enforceable under section 664.6"]; *Kohn v. Jaymar-Ruby, Inc.*, *supra*, 23 Cal.App.4th at p. 1534 [oral agreement binding where "all that remained to be done was a reduction of the agreement to a writing"].) The trial court may not create material terms of a settlement, as opposed to deciding what terms the parties agreed upon, but "[o]nce the parties have reached a settlement … they 'may not escape their obligations by refusing to sign a written agreement that conforms to the oral terms.' " (*Osumi v. Sutton*, *supra*, 151 Cal.App.4th at p. 1360, citing *Elyaoudayan*, at p. 1431.)

Souza's claim that the written settlement agreement the trial court ordered her to sign contained material terms the parties did not agree to at the settlement conference involves questions of fact that the trial court resolved against her. Further, there is nothing in the record to show Souza objected to any of the settlement terms on the ground they were uncertain, or the trial court ever considered or made any findings on that question. We do not have a transcript of the settlement conference proceedings when the settlement's terms were recited before the court. We recognize there was no court reporter at the settlement conference, but Souza could have submitted an agreed or settled statement in lieu of a reporter's transcript. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186.)

As we have stated, a trial court order or judgment is presumed correct, prejudicial error must be affirmatively shown, and in the absence of a contrary showing in the record, we make all presumptions in favor of the trial court's action. (*Foust v. San Jose Construction Co., Inc.*, *supra*, 198 Cal.App.4th at p. 187.) Souza argues in her reply brief that the trial court's order should not be given the presumption of correctness, and we should ignore the missing transcript, because the trial court's error appears on the face of the record. Rule 8.163 provides that where, on appeal on a clerk's transcript, "the error urged by the appellant does not appear on the face of the record, all intendments will be

22.

made in support of the judgment," but where the claimed error appears on the face of the record, the presumption that the record includes all matters material to determination of points on appeal applies.[15] (*Dumas v. Stark* (1961) 56 Cal.2d 673, 674; see *Robinson v. Gutierrez* (2023) 98 Cal.App.5th 278, 283 [plaintiffs barred from challenging the sufficiency of the evidence where they failed to submit a reporter's transcript of the trial and no factual error appeared on the face of the record]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [if reporter's transcript not provided "and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*"].)

Souza asserts the claimed error, namely, that the February revision contains material terms the parties did not agree to at the settlement conference, is apparent on the face of the record because the revision contains terms that are not stated in the settlement minute order. Souza contends there is no evidence that additional material terms were recited before the court or agreed to by the parties.

This argument, however, presumes it is undisputed that the only terms the parties agreed to are those stated in the minute order. Ratto, however, does not agree with this presumption. For example, they contend the parties agreed at the settlement conference to a waiver of their rights and benefits under Civil Code section 1542, as shown by: (1) Epstein's statement when sending Nunez the Ratto's October agreement about a week after the settlement conference which included the waiver provision, that it was "a formal settlement agreement and release that embodies the terms that our clients agreed to"; (2) Nunez's failure to object to the inclusion of the waiver provision when he responded in December 2023; and (3) Epstein's statement in his February 5, 2024 email to Nunez

---

[15] Rule 8.163 states: "The reviewing court will presume that the record in an appeal includes all matters material to deciding the issues raised. If the appeal proceeds without a reporter's transcript, this presumption applies only if the claimed error appears on the face of the record."

23.

that Nunez's removal of the waiver provision was a material change to the settlement terms discussed at the settlement conference. This evidence supports a finding that the parties agreed to additional material terms which they recited before the court. Moreover, in direct contrast to her claim that the settlement minute order contains the settlement agreement's terms, Souza asserts that she did not agree to one of those terms, namely, that "[Souza] is to give notice to [Ratto] of any future repair work." Instead, she argues the recorded easement requires both parties to give notice.

Thus, the purported error does not appear on the face of the record as the parties dispute whether the terms of their oral settlement agreement are solely contained in the minute order. Accordingly, we must presume the settlement minute order is correct and the missing record of the settlement conference proceedings would support the trial court's implied findings that the parties entered into an enforceable settlement agreement and agreed to the terms contained in the February revision. (See *Laabs*, *supra*, 163 Cal.App.4th at p. 1271 ["where the record is silent, we must indulge all intendments and presumptions to support the challenged ruling"].)

Moreover, as we have already discussed, we do not have a record of the proceedings for the hearing on Ratto's motion to enforce the settlement. Since the judge who issued the order granting the motion to enforce the settlement was the same judge who presided over the settlement conference, he was permitted to rely on his memory of the hearing when evaluating the motion. (*Eagle Fire*, *supra*, 102 Cal.App.5th at p. 474.) Since the minute order of the hearing on Ratto's motion did not state whether the judge relied on his memory, without a transcript of the proceedings, the record is silent on whether the judge relied on his memory. Consequently, we draw inferences favorable to the judgment and infer that the trial court's resolution of questions of fact on whether the parties agreed to the terms in the February revision was based in part upon its recollection of the settlement discussion and its observations of the attorneys' demeanor. (*Ibid*.)

24.

Souza offers no explanation as to why, in the absence of a reporter's transcript for the settlement conference proceedings, she did not seek the preparation of a settled statement from the trial court. (*Von Nothdurft v. Steck* (2014) 227 Cal.App.4th 524, 534 ["When oral proceedings are not reported or cannot be transcribed, an appellant may proceed by way of a settled statement in lieu of a reporter's transcript"].) Souza's claim that the trial court erred in finding she entered into an oral settlement agreement whose terms are contained in the February revision cannot be resolved on an appeal utilizing only the clerk's transcript. Without a reporter's transcript or suitable replacement from the settlement conference and hearing on Ratto's motion, we are unable to meaningfully review Souza's arguments on appeal.

Finally, we note that to the extent the trial court ordered Souza to execute the February revision, there is one term in that agreement the parties concede was not part of the oral settlement. Paragraph three on page three of the February revision requires Ratto to move the three swing gates beyond the easement area, thereby eliminating the need to provide Souza with gate keys. The oral agreement, however, was for Ratto to provide Souza with a new key to the three gates. By including a term that the parties did not agree to, the February revision failed to accurately reflect the parties' agreement and therefore fails to comply with section 664.6.

Accordingly, we remand the matter for the trial court to identify which of Ratto's proposed agreements Souza is required to sign and enter a formal judgment pursuant to the terms of the settlement that sets forth all the material terms.[16]

---

[16] Ratto contends Souza waived her argument that the trial court's order failed to identify which settlement agreement she was ordered to sign by failing to object to it below. But as Ratto points out, Souza may seek guidance on this issue upon remand. (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 995, fn. 3.)

## **DISPOSITION**

The March 21, 2024 order is amended to include an appealable judgment. That judgment is reversed and the matter is remanded with directions to the trial court to enter a formal judgment setting forth all the material terms of the settlement. In all other respects, the order is affirmed. Ratto is entitled to recover their costs on appeal.


                                        DE SANTOS, J.

WE CONCUR:


FRANSON, Acting P. J.


SNAUFFER, J.

26.